**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE EQUAL RIGHTS CENTER et al.,**<br><br>          **Plaintiffs,**<br><br>     **v.**<br><br>**SYMS CORP. et al.,**<br><br>          **Defendants.** | Civil Action No. 1:10-CV-00161-EGS |

**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Andrew A. Nicely (D.C. No. 458805)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C.  20006
(202) 263-3000
anicely@mayerbrown.com

*Counsel for defendants Syms Corp. &
Filene's Basement, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.     PLAINTIFFS LACK STANDING ........................................................................... 4

    A.    ERC Lacks Standing ........................................................................................ 6

        1.    ERC Lacks Organizational Standing ......................................................... 6

            a.    ERC Lacks Article III Standing To Pursue Claims Based On Injuries Allegedly Suffered By ERC Itself .............................. 7

            b.    ERC's Organizational Claims Also Are Foreclosed As A Matter Of Law By The ADA's Prudential Standing Requirement .................................................................................. 11

        2.    ERC Lacks Associational Standing ......................................................... 12

            a.    ERC Cannot Assert Associational Standing Based On The Claims Of Named Plaintiffs ......................................................... 13

            b.    ERC Has Failed To Demonstrate That Any Non-Plaintiff Member Has Standing ................................................................... 14

            c.    There Is No Associational Standing To Sue For Damages .......... 15

    B.    Johnson And Lee Lack Standing To Sue Stores They Did Not Visit ................. 16

II.    PLAINTIFFS' CLAIMS ARE TIME-BARRED .......................................................... 18

    A.    The DCHRA Supplies The Proper Statute Of Limitations For Title III Of The ADA ..................................................................................................... 18

    B.    Plaintiffs' Claims Are Untimely And Must Be Dismissed ................................ 22

III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE DCHRA ....... 23

    A.    The DCHRA Does Not Incorporate The ADA's Design And Construction Requirements .................................................................................................. 24

    B.    Plaintiffs Seek To Apply The DCHRA In A Manner That Is Unconstitutionally Vague .............................................................................. 27

CONCLUSION .................................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Access 123, Inc. v. Markey's Lobster Pool, Inc.*,
  2001 WL 920051 (D.N.H. Aug. 14, 2001) .......................................................................... 13

*Access 4 All, Inc. v. G & T Consulting Co.*,
  2008 WL 851918 (S.D.N.Y. Mar. 28, 2008) ...................................................................... 13

*Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*,
  458 F. Supp. 2d 160 (S.D.N.Y. 2006) ............................................................................6, 13

*Air Air Transp. Ass'n v. Reno*,
  80 F.3d 477 (D.C. Cir. 1996) ............................................................................................ 15

*Ass'n for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr.*
  *Bd. of Trustees*,
  19 F.3d 241 (5th Cir. 1994) .................................................................................................9

*Bates v. Rumsfeld*,
  271 F. Supp. 2d 54 (D.D.C. 2002) .......................................................................................6

*Bennett v. Spear*,
  520 U.S. 154 (1997) .....................................................................................................5, 11

*Black Farmers & Agriculturists Ass'n v. Veneman*,
  2005 WL 711821 (D.D.C. Mar. 29, 2005) ........................................................................ 16

*Blodgett v. Univ. Club*,
  930 A.2d 210 (D.C. 2007) ................................................................................................. 24

*Bodley v. Macayo Rests., LLC*,
  546 F. Supp. 2d 696 (D. Ariz. 2008) ................................................................................ 19

*Boutilier v. INS*,
  387 U.S. 118 (1967) .......................................................................................................... 28

*Brady Campaign to Prevent Gun Violence v. Ashcroft*,
  339 F. Supp. 2d 68 (D.D.C. 2004) .......................................................................................6

*Catholic Soc. Srvs. v. Shalala*,
  12 F.3d 1123 (D.C. Cir. 1994) .......................................................................................... 13

*Cephas v. MVM, Inc.*,
  403 F. Supp. 2d 17 (D.D.C. 2005) .......................................................................................3

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ......................................................................................................17

*Clark v. Burger King Corp.,*
    255 F. Supp. 2d 334 (D.N.J. 2003) ...................................................................15, 17

*Clark v. Martinez,*
    543 U.S. 371 (2005) ......................................................................................................27

*Clark v. McDonald's Corp.,*
    213 F.R.D. 198 (D.N.J. 2003) ...........................................................................11, 14

*Connally v. Gen. Constr. Co.,*
    269 U.S. 385 (1926) ......................................................................................................28

*Di Lella v. Univ. of Dist. of Columbia David A. Clarke Sch. of Law,*
    570 F. Supp. 2d 1 (D.D.C. 2008) .............................................................................19

*Disabled in Action v. Se. Penn. Transp. Auth.,*
    539 F.3d 199 (3d Cir. 2008) ......................................................................................21

*Disabled in Action v. Trump Int'l Hotel & Tower,*
    2003 WL 1751785 (S.D.N.Y. Apr. 2, 2003) ........................................................13

*East v. Graphic Arts Indus. Joint Pension Trust,*
    718 A.2d 153 (D.C. 1998) .........................................................................................24

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg & Constr. Trades Council,*
    485 U.S. 568 (1988) ......................................................................................................27

*Equal Rights Ctr. v. Hilton Hotels Corp.,*
    2009 WL 6067336 (D.D.C. Mar. 25, 2009) ..............................................*passim*

*Equal Rights Ctr. v. Post Props., Inc.,*
    657 F. Supp. 2d 197 (D.D.C. 2009) .......................................................................10

*ERC v. Filene's Basement, Inc.,*
    No. 1:08-cv-02007-EGS ....................................................................................2, 3, 22

*Everett v. Cobb County School District,*
    138 F.3d 1407 (11th Cir. 1998) ...............................................................................21

*Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.,*
    28 F.3d 1268 (D.C. Cir. 1994) ............................................................................9, 17

### TABLE OF AUTHORITIES
#### (cont'd)

Page(s)

*Frame v. City of Arlington*,
   575 F.3d 432 (5th Cir. 2009) .............................................................................. 22

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
   528 U.S. 167 (2000) ......................................................................................... 5

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990) ......................................................................................... 4

*Gaona v. Town & Country Credit*,
   324 F.3d 1050 (8th Cir. 2003) ...................................................................... 19, 21

*Gladstone, Realtors v. Vill. of Bellwood*,
   441 U.S. 91 (1979) .......................................................................................... 13

*Goldstein v. Costco Wholesale Corp.*,
   278 F. Supp. 2d 766 (E.D. Va. 2003) .................................................................. 8

*Goodman v. Lukens Steel Co.*,
   482 U.S. 656 (1987) ......................................................................................... 20

*Grand Lodge of the Fraternal Order of Police v. Ashcroft*,
   185 F. Supp. 2d 9 (D.D.C. 2001) ....................................................................... 6

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972) ......................................................................................... 28

*Holt v. Am. City Diner, Inc.*,
   2007 WL 1438489 (D.D.C. May 15, 2007) .......................................................... 17

*Hunt v. Wash. State Apple Adver. Comm'n*,
   432 U.S. 333 (1977) .................................................................................... 12, 15

*Krooth & Altman v. N. Am. Life Assurance Co.*,
   134 F. Supp. 2d 96 (D.D.C. 2001) ...................................................................... 3

*Kramer v. Regents of Univ. of Cal.*,
   81 F. Supp. 2d 972 (N.D. Cal. 1999) ............................................................. 19, 20

*Lamb v. Charlotte County*,
   429 F. Supp. 2d 1302 (M.D. Fla. 2006) .......................................................... 14, 17

*Lindh v. Murphy*,
   521 U.S. 320 (1997) ......................................................................................... 26

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

*Long Term Care Pharmacy Alliance v. UnitedHealth Group, Inc.*,
498 F. Supp. 2d 187 (D.D.C. 2007)................................................................8, 10, 15

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .........................................................................................5

*LPA Inc. v. Chao*,
211 F. Supp. 2d 160 (D.D.C. 2002).................................................................10

*Matthews v. Automated Bus. Sys. & Servs., Inc.*,
558 A.2d 1175 (D.C. 1989) .............................................................................23

*McInnis-Misenor v. Maine Med. Ctr.*,
319 F.3d 63 (1st Cir. 2003)........................................................................11, 17

*McKeython v. Cobb*,
2006 WL 1000334 (D.D.C. Apr. 13, 2006) ......................................................5

*Nat'l Alliance for the Mentallly Ill v. Bd. of County Comm'rs*,
376 F.3d 1292 (11th Cir. 2004) .......................................................................14

*Nat'l Ass'n of Home Builders v. U.S. Army Corp of Eng'rs*,
417 F.3d 1272 (D.C. Cir. 2005).................................................................4, 5, 12

*Nat'l Taxpayers Union, Inc. v. United States*,
68 F.3d 1428 (D.C. Cir. 1995)..................................................................6, 7, 8, 9

*Nat'l Treasury Employees Union v. United States*,
101 F.3d 1423 (D.C. Cir. 1996)......................................................................7, 8

*Pickern v. Holiday Quality Foods Inc.*,
293 F.3d 1133 (9th Cir. 2002) .........................................................................18

*Rainbow/Push Coal. v. FCC*,
396 F.3d 1235 (D.C. Cir. 2005).........................................................................5

*Sharpe v. Nat'l Football League Players Ass'n*,
941 F. Supp. 8 (D.D.C. 1996)............................................................................3

*Shotz v. Cates*,
256 F.3d 1077 (11th Cir. 2001) .......................................................................17

*Sierra Club v. EPA*,
292 F.3d 895 (D.C. Cir. 2002).......................................................................4, 5

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*Small v. Gen. Nutrition Cos.*,
    388 F. Supp. 2d 83 (E.D.N.Y. 2005) ............................................................. 11, 14

*Spann v. Colonial Village, Inc.*,
    899 F.2d 24 (D.C. Cir. 1990) .............................................................................. 8

*Telecomms. Research & Action Ctr. v. Allnet Commc'n Servs., Inc.*,
    806 F.2d 1093 (D.C. Cir. 1986) ........................................................................ 16

*United Food & Commercial Workers Union v. Brown Group, Inc.*,
    517 U.S. 544 (1996) ......................................................................................... 15

*Warth v. Seldin*,
    422 U.S. 490 (1975) .................................................................................. 13, 16

*Watts Parking Mgmt., Inc.*,
    2006 WL 627153 (D.D.C. Mar. 12, 2006) ....................................................... 19

*Williams v. Savage*,
    538 F. Supp. 2d 34 (D.D.C. 2008) .................................................................... 20

*Wilson v. Garcia*,
    471 U.S. 261 (1985) ........................................................................ 18, 19, 20, 21

*Wolsky v. Med. Coll. of Hampton Rds.*,
    1 F.3d 222 (4th Cir. 1993) .............................................................. 19, 20, 21

**FEDERAL STATUTES, RULES, AND REGULATIONS**

42 U.S.C. § 2000a ................................................................................................. 24

42 U.S.C. § 3601. .................................................................................................. 26

42 U.S.C. § 3604 ................................................................................................... 26

42 U.S.C. § 12182 ............................................................................................ 25, 28

42 U.S.C. § 12188 ................................................................................................. 11

Pub. L. No. 90-284, 82 Stat. 73 (Apr. 11, 1968) .................................................. 26

Pub. L. No. 100-430, 102 Stat. 1619 (Sept. 13, 1988) .......................................... 26

Pub. L. No. 101-336, 104 Stat. 327 (July 26, 1990) ............................................. 24

Federal Rule of Civil Procedure 12(b)(1) ...................................................... 1, 5, 29

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 1, 6, 23, 29

ADA Accessibility Guidelines, 28 C.F.R. § 36.101, Appx. A ............................................. 25, 28

**DISTRICT OF COLUMBIA STATUTES AND REGULATIONS**

D.C. Code § 2-1401.01 .......................................................................................................... 23

D.C. Code § 2-1402.21 ..................................................................................................... 26, 29

D.C. Code § 2-1402.31 ..................................................................................................... 24, 28

D.C. Code § 2-1403.16 .......................................................................................................... 18

D.C. Reg. No. 73-22 (Nov. 17, 1973) ............................................................................... 24, 26

D.C. Mun. Regs. tit. 4 ........................................................................................................... 25

**OTHER AUTHORITIES**

The Equal Rights Center: About Us, http://www.equalrightscenter.org/about/
    (last accessed May 26, 2010) .............................................................................................. 9

The Equal Rights Center, *Have You Been a Victim of Discrimination in Public
    Accommodations or Government Services?* (2009), *available at*
    http://www.equalrightscenter.org/rights/documents/PublicAccommadationsandGover
    nmentServices.pdf ............................................................................................................ 10

Defendants Syms Corp. and Filene's Basement, LLC (f/k/a SYL, LLC), respectfully move the Court to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the first amended complaint of plaintiffs Equal Rights Center ("ERC"), Marsha Johnson, and Regina Lee.  Dismissal is warranted because plaintiffs lack standing, their claims are time barred, and because none of them have stated a claim upon which relief may be granted under the District of Columbia Human Rights Act ("DCHRA").

## INTRODUCTION

This lawsuit is the latest in a series of cases that ERC has filed against local businesses for alleged violations of the accessible design standards imposed by the Americans with Disabilities Act ("ADA").  In a nutshell, ERC and two of its members, Johnson and Lee, allege that disabled customers may have difficulty using some of the amenities at certain Filene's Basement stores owned by Syms because of the architectural design and interior layout of the stores.  The ADA permits private plaintiffs to obtain an injunction requiring the remediation of barriers if removal is readily achievable, but the statute does not allow them to recover damages. As a result, plaintiffs contend that an inaccessible condition that violates the ADA also violates the DCHRA, which does establish a damages remedy.  None of the plaintiffs has pleaded a claim for any form of relief under either statute.

ERC already has been told by two courts in this District that it lacks standing to pursue accessible design claims against public accommodations and multifamily housing developers.  It cannot establish organizational standing, or standing in its own right, because ERC itself cannot claim to have been discriminated against, and it has not suffered an "injury in fact."  Likewise, ERC cannot establish associational standing, or derivative standing based on injuries suffered by its members, because apart from Johnson and Lee, who are prosecuting their own claims, ERC

has not identified any of its members who purportedly were injured by the design of one or more Filene's Basement stores.  Thus, ERC must be dismissed from this suit.

By contrast, plaintiffs Johnson and Lee have alleged facts that, if proven, may be sufficient to establish their individual standing with respect to the Filene's Basement stores in the District of Columbia that they actually visited.  They cannot, however, assert standing as to locations they have not visited.   Thus, at most (that is, if certain facts as alleged in the complaint are later proven true), Johnson and Lee may have standing to assert claims against Syms only with respect to the design and construction of the 1133 Connecticut location and the 5300 Wisconsin location.  To the extent Johnson and Lee assert claims involving other Filene's Basement stores, those claims must be dismissed for lack of standing.

The complaint should be dismissed in its entirety for the independent reason that all of the claims asserted are barred by the statute of limitations.  The DCHRA imposes a one-year limitation on actions, and the same time limit applies to the ADA claims because the ADA does not contain its own limitations period and the DCHRA is the most analogous state statute. Plaintiffs' own pleadings affirmatively show that the alleged accessibility violations about which they complain are substantially more than a year old.  Accordingly, plaintiffs' claims are time barred and must be dismissed with prejudice.

Finally, and at a minimum, plaintiffs' DCHRA claims should be dismissed for failure to state a claim because that statute does not impose design or construction requirements on places of public accommodation, and plaintiffs' attempt to engraft such requirements onto the statute would render it unconstitutionally void for vagueness.

## BACKGROUND

This dispute dates back at least as far as 2005, when an ERC member visited the Filene's Basement store on Connecticut Avenue and discovered a variety of conditions that allegedly

were not in conformity with the ADA's accessibility standards.  *See* Compl., *ERC v. Filene's Basement, Inc.*, No. 1:08-cv-02007-EGS,  ¶ 13 (D.D.C. filed Nov. 21, 2008) (Dkt. #1).[1]  ERC did not do anything about its concerns immediately.  In October 2008, plaintiff Johnson visited the Wisconsin Avenue store in the District and allegedly encountered inaccessible features while shopping there.  *See id.* at ¶ 16.  Thereafter, in November 2008, ERC filed a lawsuit against the owner of the stores, which at that time was Filene's Basement, Inc.

In May 2009, while the ERC lawsuit was pending, Filene's Basement, Inc. filed a Chapter 11 bankruptcy petition.  *See* First Amended Complaint ("Compl.") ¶ 1 n.1 (Dkt. #12).  The lawsuit was stayed, and in June 2009, Syms purchased certain of the company's assets from the bankruptcy estate, including the stores at issue in this case.  *See id.*

To lay the groundwork for a lawsuit against Syms, as the new owner of the stores, Johnson visited the Connecticut Avenue store on October 1, 2009, purportedly to buy a pair of socks.  *See* Compl. ¶ 19.  She alleges that she encountered several accessible design issues at the store, including racks of merchandise that were spaced too close together, causing garments to become entangled in her wheelchair.  *See id.* ¶¶ 19-21.  On the basis of Johnson's October 2009 visit, ERC and Johnson filed their original complaint against Syms on January 26, 2010.  *See* Dkt. #1.

On January 29, 2010, or three days after ERC and Johnson filed this lawsuit, plaintiff Lee visited the Filene's Basement on Wisconsin Avenue, apparently to seek out purported accessibility violations at that location.  *See* Compl. ¶ 25.  She allegedly found some.  *See id.* ¶

---

[1]     The Court may consider the earlier complaint against Filene's Basement, Inc. because it is "'referred to in the complaint [in this lawsuit], and [is] central to the plaintiffs' claims.'"  *Cephas v. MVM, Inc.*, 403 F. Supp. 2d 17, 20 (D.D.C. 2005) (quoting *Krooth & Altman v. N. Am. Life Assurance Co.*, 134 F. Supp. 2d 96, 99 (D.D.C. 2001)); *see also Sharpe v. Nat'l Football League Players Ass'n*, 941 F. Supp. 8, 10 n.1 (D.D.C. 1996) (considering contents of a collective bargaining agreement in connection with Rule 12 motion).

26.  Accordingly, on May 5, 2010, ERC and Johnson filed an amended complaint naming Lee as an additional plaintiff.  *See* Dkt. #12.  In addition to the store visits performed by Johnson and Lee, ERC asserts that it conducted site surveys of Filene's Basement stores in the District of Columbia, Maryland, Massachusetts, and New York, the results of which allegedly revealed accessible design violations at each location.  *Id*. ¶¶ 31-40.  Plaintiffs did not inform Syms of their concerns before filing this lawsuit to determine whether the design issues could be addressed without the expense and distraction of litigation.

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING.

ERC must be dismissed from this case because it lacks standing to pursue any of its claims against Syms.  Furthermore, the standing doctrine precludes Johnson and Lee from asserting claims involving department stores that they have never visited.  It is well settled that "standing is a prerequisite to jurisdiction," the absence of which "robs a federal court of the power to act."  *Nat'l Ass'n of Home Builders v. U.S. Army Corp of Eng'rs*, 417 F.3d 1272, 1286 (D.C. Cir. 2005).  Accordingly, plaintiffs "bear the burden of establishing their standing to sue," and they must "prove their standing by a substantial probability."  *Id.* (internal quotations omitted).  "When a complainant's standing is not 'self-evident,' he must 'supplement the record to the extent necessary to explain and substantiate his entitlement to judicial review.'"  *Id.* (alteration omitted, quoting *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002)).  When, as here, plaintiffs "fail to make the necessary allegations, they have no standing" and their complaint must be dismissed.  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (alterations and internal quotations omitted).

Federal courts have recognized both constitutional and prudential limitations on standing.  To establish constitutional standing, a plaintiff must show that "(1) it has suffered an 'injury in

fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).   Prudential standing requires, in addition, "'that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision.'"   *Nat'l Ass'n of Home Builders*, 417 F.3d at 1287 (quoting *Bennett v. Spear*, 520 U.S. 154, 162 (1997)).

The D.C. Circuit has made clear that standing should be resolved as early and expeditiously as possible in litigation: "As the complainant is ordinarily in possession of the facts on which he relies for standing, making those facts manifest at the outset saves the parties and the court from squandering time and energy, either by flailing at the unknown in an attempt to prove the negative or by needlessly wrangling over an uncontested point." *Nat'l Ass'n of Home Builders*, 417 F.3d at 1286 (alteration and internal quotations omitted).   Thus, because it is plaintiffs' burden to prove standing, they must submit "affidavits or other evidence" establishing standing by a "substantial probability." *Id*.; *see also Rainbow/Push Coal. v. FCC*, 396 F.3d 1235, 1239 (D.C. Cir. 2005) (explaining that, to withstand a Rule 12(b)(1) motion, a plaintiff must "'cit[e] any record evidence relevant to its claim of standing and, if necessary, append[] to its filing additional affidavits or other evidence sufficient to support its claim.'") (quoting *Sierra Club*, 292 F.3d at 900-01).   Dismissal is proper under Rule 12(b)(1) when, as here, the plaintiffs are unable to prove that they have standing. *See, e.g., McKeython v. Cobb*, 2006 WL 1000334,

at *1 (D.D.C. Apr. 13, 2006); *Brady Campaign to Prevent Gun Violence v. Ashcroft*, 339 F. Supp. 2d 68, 72-73 (D.D.C. 2004).[2]

**A.      ERC Lacks Standing.**

An organization can establish standing in its own right through some injury it suffered itself ("organizational standing") or through injuries suffered by one or more of its members if those members are specifically identified and have elected not to pursue their grievances themselves ("associational standing").   *See Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1433 (D.C. Cir. 1995); *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 175 (S.D.N.Y. 2006).   Here, ERC claims to have both organizational and associational standing (*see* Compl. ¶ 12), but as other courts in this District have recognized, it cannot establish either type.

**1.      ERC Lacks Organizational Standing.**

To the extent that ERC is seeking relief for its own purported injuries, it lacks both constitutional and prudential standing.   ERC cannot establish constitutional standing because it cannot show that it has suffered an injury in fact.   It is well settled that the injuries ERC claims to have suffered — the "frustration" of its mission and the "diversion" of its resources — are legally insufficient to satisfy Article III's injury in fact requirement.   Prudential limits on standing also foreclose ERC's attempt to seek relief for its own benefit.   As numerous courts have held, Title III of the ADA only creates a cause of action in favor of natural persons who have actually experienced discrimination.   Thus, these prudential limits preclude ERC from seeking relief with respect to purported injuries to its mission and program resources.

---

[2]      In resolving a Rule 12(b)(1) motion, the Court "may consider 'such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction in the case.'" *Bates v. Rumsfeld*, 271 F. Supp. 2d 54, 60 (D.D.C. 2002) (quoting *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 14 (D.D.C. 2001)).

a.      *ERC Lacks Article III Standing To Pursue Claims Based On Injuries Allegedly Suffered By ERC Itself.*

Article III standing requires every plaintiff suing in federal court to point to  an "injury in fact" that is both "concrete and particularized" as well as "actual or imminent." *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal quotations omitted).  To satisfy this requirement, "an organization suing on its own behalf must demonstrate that it has suffered concrete and demonstrable injury to its activities." *Id.* (internal quotations omitted).  More specifically, "the organization must allege that discrete programmatic concerns are being directly and adversely affected by the challenged action." *Nat'l Taxpayers Union*, 68 F.3d at 1433 (alteration & internal quotations omitted).  It is well settled that Article III standing "requires more than allegations of damage to an interest in seeing the law obeyed or a social goal furthered," *id.*, and that "[a] mere setback to the organization's abstract social interests is inadequate to establish standing." *Nat'l Treasury Employees Union*, 101 F.3d at 1427 (internal quotations omitted).

As it customarily does in its lawsuits against public accommodations, ERC claims that the defendants' alleged failure to achieve strict compliance with the ADA's accessible design standards caused ERC to suffer two interrelated injuries.  First, ERC claims to have been "frustrat[ed]" in carrying out its mission, which is "to achieve equality of access for persons with mobility impairments and to eliminate discrimination against persons with disabilities in public accommodations."  Compl. ¶¶ 12, 52.  Second, ERC contends that it was forced to "divert resources that the ERC would have used to provide counseling, outreach and education, and referral services." *Id.* ¶ 12.  As we now show, however, courts consistently have held that neither of these purported injuries is cognizable for purposes of Article III standing.

As to the first type, the D.C. Circuit has repeatedly held that the "[f]rustration of an organization's objectives 'is the type of abstract concern that does not impart standing.'" *Nat'l Treasury Employees Union*, 101 F.3d at 1429 (quoting *Nat'l Taxpayers Union*, 68 F.3d at 1433); *see id.* (explaining that "conflict between a defendant's conduct and an organization's mission" is insufficient to establish Article III standing); *see also Long Term Care Pharmacy Alliance v. UnitedHealth Group, Inc.*, 498 F. Supp. 2d 187, 192 (D.D.C. 2007) ("The law is clear that actions contrary to an organization's mission do not create an injury if the organization's activities are not somehow impeded."). Thus, "an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III." *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) (internal quotations omitted). ERC's bald reference to the "frustration of [its] mission" is insufficient as a matter of law to demonstrate standing. *See Goldstein v. Costco Wholesale Corp.*, 278 F. Supp. 2d 766, 771 (E.D. Va. 2003) ("When an organization's primary source of revenue is litigation directed against alleged discrimination, it cannot be said that the organization's participation in such litigation impairs its ability to do its work.").

ERC's alternative claim of injury — based on the alleged "diversion" of its resources — also is insufficient as a matter of law. If ERC has financed this lawsuit with funds that otherwise would have been used for counseling activities, that discretionary decision does not give rise to an Article III injury. Instead, the D.C. Circuit has long held that "[a]n organization cannot, of course, manufacture the injury necessary to maintain a suit from its expenditure of resources on that very suit. Were the rule otherwise, any litigant could create injury in fact by bringing a case, and Article III would present no real limitation." *Spann*, 899 F.2d at 27. Put another way, an organization has "no legally-protected interest in not expending their resources on behalf of

individuals for whom they are advocates, at least where the only resources 'lost' are the legal costs of the particular advocacy lawsuit." *Ass'n for Retarded Citizens v. Dallas County Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994).   Thus, ERC's decision to sue Syms, allegedly to the detriment of any non-litigation programs it has, cannot establish standing.

For just the same reason, any expenses ERC incurred by sending "testers" to look for possible ADA violations at defendants' stores cannot qualify as  an "injury in fact."   The D.C. Circuit has "explicitly reject[ed]" the argument "that the mere expense of testing * * * constitute[s] [an] 'injury in fact' fairly traceable" to a defendant's conduct.   *Fair Employment Council of Greater Washington, Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276 (D.C. Cir. 1994). In *BMC Mktg.*, the Court explained:

> The diversion of resources to testing might well harm the [Fair Employment] Council's other programs, for money spent on testing is money that is not spent on other things.   But this particular harm is self-inflicted; it results not from any actions taken by [defendant] BMC, but rather from the Council's own budgetary choices.   Indeed, it is not really a harm at all; assuming that BMC's actions did not have any *other* effect on the Council's programs independent of its efforts to increase legal pressure on possible open housing violators, the Council and its programs would have been totally unaffected if it had simply refrained from making the re-allocation.   One can hardly say that BMC has injured the Council merely because the Council has decided that its money would be better spent by testing BMC than by counseling or researching.

*Id*. at 1276-77.[3]

Simply put, in the case of an organization like ERC that regularly files lawsuits against local businesses, the resulting costs are not injuries at all, but rather "ordinary program costs." *Nat'l Taxpayers Union*, 68 F.3d at 1434.   Given the substantial and ever-growing number of

---

[3]     The plaintiff in the *BMC* case, the Fair Employment Council of Greater Washington, is a predecessor organization to the ERC.   *See* The Equal Rights Center: About Us, http://www.equalrightscenter.org/about/ (last accessed May 26, 2010).

lawsuits that ERC has filed, litigation can only be described as a "program" *in and of itself* that ERC has made the affirmative decision to pursue.[4]   And the expenses ERC incurred in administering its litigation program do not constitute an injury sufficient for standing purposes, as courts in this District consistently have held.  *See*, *e.g., Long Term Care Pharmacy Alliance*, 498 F. Supp. 2d at 192 ("Were an association able to gain standing merely by choosing to fight a policy that is contrary to its mission, the courthouse door would be open to all associations."); *LPA Inc. v. Chao*, 211 F. Supp. 2d 160, 165 (D.D.C. 2002) ("[I]t is settled that a plaintiff cannot show injury simply by pointing to an expenditure of resources such as increased litigation costs or lobbying expenses.").

Late last year, another court in this District squarely rejected ERC's attempt to establish standing based on a diversion of resources theory indistinguishable from the one set out in the complaint in this case.  *See Equal Rights Ctr. v. Post Props., Inc.*, 657 F. Supp. 2d 197 (D.D.C. 2009).  The court in that case aptly concluded that ERC's expenditures on site-surveys of the defendants' apartment buildings were not a cognizable injury because "ERC *chose* to redirect its resources to investigate [defendant's] allegedly discriminatory practices."  *Id.* at 201 (emphasis in original).  In other words, having made a voluntary decision to spend time and money setting up its next lawsuit, ERC was unable "to establish that the injuries it suffered were *not* due to a self-inflicted diversion of resources."  *Id*. (emphasis in original).  The same is true here, and ERC's claim of organizational standing should be summarily rejected.

---

[4]   In the past three years alone, ERC filed 22 lawsuits in this Court, and it does not hesitate to tout its litigation program.  *See, e.g.,* Equal Rights Center, *Have You Been a Victim of Discrimination in Public Accommodations or Government Services?* (2009), *available at* http://www.equalrightscenter.org/rights/documents/PublicAccommadationsandGovernmentServices.pdf.

> b.   *ERC's Organizational Claims Also Are Foreclosed As A Matter Of Law By The ADA's Prudential Standing Requirement.*

Prudential standing principles also preclude ERC from asserting violations of Title III of the ADA in its own right.   "Congress legislates against the background of [the] prudential standing doctrine, which applies unless it is expressly negated [by the statutory text]."   *Bennett*, 520 U.S. at 163.   Title III of the ADA — the provision that governs the design and construction of places of "public accommodation" — does not negate the presumption of prudential standing. Quite to the contrary, by its plain terms, Title III provides a remedy only to a "person who is *being subjected to discrimination* on the basis of a disability * * * or who has reasonable grounds for believing that such a person is *about to be subjected to discrimination*."   42 U.S.C. § 12188(a)(1) (emphasis added); *see also Equal Rights Ctr. v. Hilton Hotels Corp.*, 2009 WL 6067336, at *4 (D.D.C. Mar. 25, 2009) (quoting same).

Applying the plain language of the statute, federal courts around the country consistently have held that organizational plaintiffs can satisfy the prudential standing requirement only if the organization itself was a victim of discrimination.   *See*, *e.g., Small v. Gen. Nutrition Cos.*, 388 F. Supp. 2d 83, 92-93 (E.D.N.Y. 2005) ("The enforcement provision of Title III clearly envisions that a plaintiff himself must currently be suffering or be about to suffer discrimination. * * * A plaintiff like [Disability in Action] * * *, which has suffered no direct discrimination but has only incurred any potential injuries as a result of discrimination against others, is provided no remedy by Title III of the ADA."); *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 210 (D.N.J. 2003) ("[T]he language of the enforcement provision off Title III of the ADA does not evince a congressional intent to eliminate a prudential barrier to the standing of an organization to sue to remedy injury it suffers as a result of discrimination against the disabled, where the organization is not itself being subjected to * * * such discrimination."); *see also McInnis-Misenor v. Maine*

*Med. Ctr.*, 319 F.3d 63, 69-70 (1st Cir. 2003) (applying prudential standing limitations to an individual's Title III claim).

ERC is well aware of the prudential standing requirement.  In fact, just last year, another court in this District ruled that ERC could not satisfy the requirement because the complaint did not allege that the Hilton Hotels Corporation somehow had discriminated against ERC when it designed and constructed its hotels.  *See Hilton Hotels*, 2009 WL 6067336, at *4-5.  As the court explained, "Title III expressly limits its scope to those who have, or will be, subject to discrimination. * * * Rather than lifting prudential standing limitations, Title III reiterates their applicability."  *Id.* at *4.  Because ERC itself cannot possibly be "subjected to discrimination," any grievance it has against Syms necessarily falls outside "the zone of interests protected or regulated by the statutory provision."  *Nat'l Ass'n of Home Builders*, 417 F.3d at 1287 (internal quotations omitted).  Thus, as Judge Robertson concluded in *Hilton Hotels*, the prudential standing requirement bars ERC from bringing a claim based on the entity's own purported injuries.

### 2.        ERC Lacks Associational Standing.

With no colorable claim of injury to establish standing in its own right, ERC likely will attempt to fall back on an associational standing theory.  To stave off dismissal under such a theory, ERC must demonstrate that (1) "its members would otherwise have standing to sue in their own right," (2) "the interests it seeks to protect are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).  Any claim of associational standing that ERC may assert would be defective for three reasons.  First, ERC cannot glom onto the standing of Johnson and Lee because they have come forward to prosecute their own claims.  Second, ERC has failed to demonstrate that any of its other

members have suffered an injury in fact at a Filene's Basement store.  And, as a matter of law, ERC cannot seek to recover damages under an associational standing theory.

> a.   *ERC Cannot Assert Associational Standing Based On The Claims Of Named Plaintiffs.*

The complaint does not identify any ERC members with grievances against Syms other than named plaintiffs Johnson and Lee.  By appearing as plaintiffs, Johnson and Lee have ensured that their interests will be fully represented.  Thus, ERC cannot assert associational standing on the basis of injuries allegedly suffered by one of the individual plaintiffs.  As the D.C. Circuit has held, a "'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  *Catholic Soc. Srvs. v. Shalala*, 12 F.3d 1123, 1126 (D.C. Cir. 1994) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  Standing is limited "to those litigants best suited to assert a particular claim." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979).

Consistent with these principles, when an organization asserts claims that are identical to those of a named plaintiff and "produce[s] no evidence of injury to other disabled persons," the organization lacks standing.  *Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d at 175; *see also Access 4 All, Inc. v. G & T Consulting Co.*, 2008 WL 851918, at *9 (S.D.N.Y. Mar. 28, 2008) ("[P]rudential limitations on standing often dictate that the claims of an associational ADA plaintiff be dismissed, where its claims are identical to those of the individual plaintiffs in the case."); *Disabled in Action v. Trump Int'l Hotel & Tower*, 2003 WL 1751785, at *10 (S.D.N.Y. Apr. 2, 2003) (dismissing associational plaintiff because its claims were identical to named plaintiffs' and individuals were "better plaintiffs"); *Access 123, Inc. v. Markey's Lobster Pool, Inc.*, 2001 WL 920051, at *4 (D.N.H. Aug. 14, 2001) ("In this case, Access 123 is merely repeating the claims brought by Muehe, himself.  Muehe appears to be the better party to assert

- 13 -

his own claims.   Therefore, Access 123 lacks standing to assert claims on Muehe's behalf

* * *.").   Thus, Johnson and Lee cannot be the foundation for ERC's claim of associational

standing.   Rather, to avoid dismissal, ERC was required to identify injured members of the

organization who could, but have not, asserted their own individual claims.   ERC failed to do so,

and it therefore lacks associational standing.

> b.   *ERC Has Failed To Demonstrate That Any Non-Plaintiff Member Has Standing.*

Other than Johnson and Lee, the complaint does not identify with the requisite specificity

any ERC member who purportedly was injured by the design of a local Filene's Basement store

and who accordingly may have standing to pursue a claim.   *See Nat'l Alliance for the Mentallly*

*Ill v. Bd. of County Comm'rs*, 376 F.3d 1292, 1296 (11th Cir. 2004).   ERC cannot maintain an

associational standing theory absent proof that certain of its members would have standing to

pursue this action individually.   *See Lamb v. Charlotte County*, 429 F. Supp. 2d 1302, 1311

(M.D. Fla. 2006); *Small*, 388 F. Supp. 2d at 97.   In other words, to withstand a motion to dismiss,

ERC must show (1) "who these members are," (2) which Filene's Basement stores they visited,

(3) "what accessibility barriers they encountered," and (4) "whether they would return * * * were

it not for the accessibility barriers."   *Hilton Hotels*, 2009 WL 6067336, at *5.   ERC has not

alleged any of these facts as to any of its members.

As the court in *Hilton Hotels* correctly recognized, ERC cannot pursue claims against a

defendant for defects at a particular facility absent proof that one or more ERC members actually

visited that facility and can demonstrate "a specific and imminent desire to return."   2009 WL

6067336, at *7; *accord Small*, 3888 F. Supp. 2d at 88-89; *McDonald's Corp.,* 213 F.R.D. at 215

(finding that, to establish associational standing, the organization would have to come forward

with evidence establishing that a member would visit a particular location in the future but for

the architectural barrier); *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 343 (D.N.J. 2003). Because ERC has not made that showing here with respect to any of its members, it lacks associational standing and it should be dismissed from this lawsuit.

           c.      *There Is No Associational Standing To Sue For Damages.*

The ADA does not permit private plaintiffs to recover damages for violations of the statute's design and construction requirements, but ERC and the individual plaintiffs contend that they are entitled to damages under the DCHRA.  Compl. at 22-23.  Not so.  As we demonstrate below in Part III, plaintiffs have failed to state a claim under the DCHRA. Moreover, even if the DCHRA created a damages remedy for design and construction errors in public accommodations, ERC lacks standing to seek damages for injuries purportedly suffered by its members.

The Supreme Court held in *Hunt* that associational standing cannot be maintained if either "the claim asserted [or] the relief requested requires the participation of individual members in the lawsuit."  432 U.S. at 343.  It is well settled that "individual participation" almost always is required "in an action for damages to an association's members," because the quantum of damages suffered by each member requires individualized inquiries.  *United Food & Commercial Workers Union v. Brown Group, Inc.*, 517 U.S. 544, 546 (1996); *see id.* at 554-57; *accord Long Term Care Pharmacy Alliance*, 498 F. Supp. 2d at 193 ("In virtually all cases, a claim for monetary damages requires the participation of individual members of the association, thus failing the third prong of the *Hunt* test.").

The D.C. Circuit, applying this principle, has held time and again that organizations relying on an associational standing theory cannot recover damages.  *See*, *e.g., Air Air Transp. Ass'n v. Reno*, 80 F.3d 477, 483-84 (D.C. Cir. 1996) (associational standing is inappropriate because "damages claims are not common to the entire membership, nor shared by all in equal

degree") (quoting *Warth*, 422 U.S. at 515-16); *Telecomms. Research & Action Ctr. v. Allnet Commc'n Servs., Inc.*, 806 F.2d 1093, 1095 (D.C. Cir. 1986) ("[L]ower federal courts have consistently rejected association assertions of standing to seek monetary, as distinguished from injunctive or declaratory, relief on behalf of the organization's members."); *see also Black Farmers & Agriculturists Ass'n v. Veneman*, 2005 WL 711821, at *1-2 (D.D.C. Mar. 29, 2005) (association that sought damages on behalf of members lacked standing).  Thus, even if the DCHRA could be construed to provide a damages remedy for violations of the ADA's accessibility guidelines, ERC lacks standing to seek damages for injuries its members allegedly suffered when they encountered inaccessible conditions at local Filene's Basement stores.

**B.    Johnson And Lee Lack Standing To Sue Stores They Did Not Visit.**

The individual plaintiffs, Johnson and Lee, at most have standing to seek relief with respect to the particular Filene's Basement store where they allegedly encountered accessibility barriers — in Johnson's case, the Connecticut Avenue store, and in Lee's case, the Wisconsin Avenue store.  These plaintiffs lack standing to complain about alleged barriers at other Filene's Basement stores for two reasons.  First, it goes without saying that a person cannot have been injured by an inaccessible condition in a building that she has never visited.  Second, the fact that the plaintiff has not visited other Filene's Basement stores sharply undercuts any suggestion that he or she would visit those stores in the future if any barriers are removed; a necessary prerequisite for an injunction requiring the removal of barriers.

As an initial matter, neither Johnson nor Lee can demonstrate that they suffered an "injury in fact" at stores that they have not visited.  As a result, the Article III standing of these plaintiffs necessarily is limited to the stores where they claim to have been injured and as to which they can demonstrate "a specific and imminent desire to return."  *Hilton Hotels*, 2009 WL 6067336, at *7.  Johnson and Lee cannot complain about alleged barriers at other stores because

"[t]he ADA does not permit private plaintiffs to bring claims as private attorneys general to vindicate other people's injuries." *McInnis-Misenor*, 319 F.3d at 69; *accord Burger King Corp.*, 255 F. Supp. 2d at 343 (holding that plaintiff "has suffered no injury at Burger King restaurants he has yet to visit").

To obtain injunctive relief requiring the removal of accessibility barriers at defendants' stores, Johnson and Lee "must allege that they themselves are likely to suffer *future* injury" at those stores in the absence of an injunction. *BMC Mktg.*, 28 F.3d at 1273 (emphasis added). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (alteration and internal quotations omitted). That is to say, "a plaintiff 'must allege a likelihood of future *violations* of his rights, not simply future *effects* from past violations.'" *Holt v. Am. City Diner, Inc.*, 2007 WL 1438489, at *4 (D.D.C. May 15, 2007) (alterations omitted; quoting *BMC Mktg.*, 28 F.3d at 1273). "In ADA cases, courts have held that a plaintiff lacks standing to seek injunctive relief unless he alleges facts giving rise to an inference that he will suffer *future* discrimination by the defendant." *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001) (emphasis added); *see also Lamb*, 429 F. Supp. 2d at 1310 (individual plaintiff lacked standing "to seek injunctive relief because the facts do not give rise to the inference that future unlawful discrimination will occur").

Here, Johnson and Lee cannot possibly make the necessary showing for stores that they have not visited. They cannot plausibly demonstrate that they *are likely to return* to stores in the future when they do not claim to have ever visited them before. Accordingly, Johnson lacks standing to assert claims involving any store other than the one on Connecticut Avenue and Lee's standing does not extend to any store other than the one on Wisconsin Avenue.

## II.   PLAINTIFFS' CLAIMS ARE TIME-BARRED.

This case should be dismissed in its entirety for the independent reason that all of plaintiffs' claims are time-barred.  Title III of the ADA does not contain a statute of limitations and, as a result, federal courts "borrow" the most closely analogous statute of limitations from state law.  *See Wilson v. Garcia*, 471 U.S. 261, 266 (1985) (holding that when federal civil rights statute is silent as to the limitations period, courts must apply the most analogous state limitations period); *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1136-37 (9th Cir. 2002) (applying state statute of limitations to ADA Title III claim).  As we explain below, the most analogous statute of limitations is the one-year period that the DCHRA affords for claims against public accommodations.  That period expired more than a year before this suit was filed, and indeed, plaintiffs' claims would be untimely even if the Court were to apply a three-year limitations period.  Accordingly, the complaint should be dismissed with prejudice.

### A.   The DCHRA Supplies The Proper Statute Of Limitations For Title III Of The ADA.

In *Wilson*, the Supreme Court explained that, when borrowing a state limitations period for use with a federal statute that does not contain one, courts should select "the one most appropriate statute of limitations for all [such] claims."  *Wilson*, 471 U.S. at 275.  The District of Columbia does not have a statute that, like Title III of the ADA, establishes accessible design standards for public accommodations.  Nevertheless, the DCHRA is the most closely analogous statute because it generally prohibits discrimination in places of public accommodations.  The default limitations period under the DCHRA is one year, *see* D.C. Code § 2-1403.16, and the Court should apply that time limit to plaintiffs' ADA claims as well.

In similar circumstances, the Fourth Circuit has held that a state anti-discrimination statute modeled after a federal statute supplied the limitations period for the federal claim.  *See*

*Wolsky v. Med. Coll. of Hampton Rds.*, 1 F.3d 222, 224 (4th Cir. 1993) ("Given that the Virginia

Act is patterned after the Rehabilitation Act, the district court should have applied the statute of

limitations found in the Virginia Act rather than the personal injury statute of limitations. *Wilson*

requires district courts to look to the most appropriate state statute of limitations.").   Other

district courts have likewise adopted the common-sense notion that state laws with goals and/or

requirements similar to those of the ADA provide the appropriate statute of limitations for a non-

employment ADA claim.   *See*, *e.g., Bodley v. Macayo Rests., LLC*, 546 F. Supp. 2d 696, 700 (D.

Ariz. 2008); *Kramer v. Regents of Univ. of Cal.*, 81 F. Supp. 2d 972, 976 (N.D. Cal. 1999) ("This

Court is persuaded that the reasoning of *Wolsky* is correct.  Because *Wilson* requires determining

the appropriate statute of limitations by 'adopting the statute governing an analogous cause of

action under state law,' this Court must look to the state law most analogous to the ADA and the

Rehab Act." (quoting *Wilson,* 471 U.S. at 271)).   And, in other contexts, courts in this District

have expressly applied the DCHRA limitations period to federal claims and the D.C. Circuit has

affirmed.   *See, e.g., Watts Parking Mgmt., Inc.*, 2006 WL 627153, at *4 (D.D.C. Mar. 12, 2006)

(applying DCHRA limitations period to ERISA interference claim), *aff'd per curiam*, 210 F.

App'x 13 (D.C. Cir. 2006).

Syms acknowledges that some courts in this District have applied the District of

Columbia's three-year personal injury limitation period to ADA accessible design claims.[5]  That

approach is incorrect, Syms respectfully submits, and should be rejected here.  Instead, until the

---

[5]       *See*, *e.g., Di Lella v. Univ. of Dist. of Columbia David A. Clarke Sch. of Law*, 570 F.
Supp. 2d 1, 7 n.9 (D.D.C. 2008) ("In the District of Columbia, the three-year personal injury
statute of limitations applies to non-employment claims of discrimination brought pursuant to the
ADA.").  Although circuit courts outside D.C. also have adopted this view, *see*, *e.g., Gaona v.
Town & Country Credit,* 324 F.3d 1050, 1054-55 (8th Cir. 2003), the D.C. Circuit has not yet
opined on this split in the circuits.  *See Williams v. Savage*, 538 F. Supp. 2d 34, 39-40 (D.D.C.
2008) (observing that "the D.C. Circuit has not addressed the issue").

D.C. Circuit has had an opportunity to address the issue, the Court should follow the Fourth Circuit's approach in *Wolsky* for three separate reasons.

**First**, *Wolsky* correctly applies the Supreme Court's decision in *Wilson*, which requires federal courts to "adopt the statute governing an analogous cause of action under state law." *Wilson,* 471 U.S. at 271; *accord Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987) (reiterating that "federal courts should select the most appropriate or *analogous* state statute of limitations") (emphasis added).   The DCHRA is far more analogous to the ADA than is a common law personal injury claim.  *See Kramer*, 81 F. Supp. 2d at 976 ("Unlike the broad § 1983 claims in *Wilson,* here the more specific nature of ADA allows for a direct relationship to state law prohibiting disability discrimination.   Because the Unruh Act and the California Disabled Persons Act both essentially incorporate the ADA in its entirety, this Court concludes that those laws are directly analogous to federal disability discrimination laws.").   By contrast, applying the District of Columbia's generic personal injury statute of limitations would ignore the Supreme Court's instruction to borrow the "most * * * analogous" state statute of limitations.

**Second**, *Wolsky* leads to the sensible result that federal and state claims seeking relief for the same alleged injuries should have the same limitations period.  To hold otherwise would invite forum shopping between state and federal fora and would have the unintended consequence of causing state law claims that were designed to complement federal statutory claims expire at different times.  As the court recognized in *Kramer*, applying the personal injury limitations period would mean that "the statute of limitations would differ depending on whether a plaintiff filed her claim in state or federal court."  81 F. Supp. 2d at 977.  The court rejected that result, finding that it "would undercut consistency between state and federal forums and contravene the *Wilson* policy of 'adopting the statute governing an analogous cause of action

under state law to incorporate the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action.'" *Id.* (alterations omitted; quoting *Wilson,* 471 U.S. at 271).

*Third*, as the Fourth Circuit observed, courts that have applied the personal-injury statute of limitations to parallel federal claims have largely done so in jurisdictions that do not have a state anti-discrimination statute; thus the personal-injury limitation period actually was the closest analog to the federal statute. *Wolsky*, 1 F.3d at 224.  For example, in *Everett v. Cobb County School District*, 138 F.3d 1407, 1409 (11th Cir. 1998), the Eleventh Circuit explained that "[b]ecause Georgia has not passed a state law identical to the Rehabilitation Act from which to borrow a limitations period, we follow the lead of the other circuits that have decided this issue and apply Georgia's two-year statute of limitations period for personal injury actions."  And a number of courts have neglected to consider whether a state anti-discrimination law is the more apt comparison.  *See*, *e.g., Disabled in Action v. Se. Penn. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008); *Gaona v. Town & Country Credit,* 324 F.3d 1050, 1055 (8th Cir. 2003).  Just as in *Wolsky*, where Virginia had adopted a comprehensive anti-discrimination statute modeled after the Rehabilitation Act, the District of Columbia has likewise adopted a comprehensive anti-discrimination statute in the DCHRA.  The DCHRA thus reflects a well-calibrated judgment regarding the appropriate limitations period for discrimination claims involving public accommodations.  Precedent born in jurisdictions that lack a similar anti-discrimination statute is of no value in a jurisdiction like this one where such a statute has been enacted.

### B.    Plaintiffs' Claims Are Untimely And Must Be Dismissed.

As the Fifth Circuit recently held, the limitations period for ADA design and construction claims begins to run when the allegedly noncompliant building is constructed or renovated.  *See Frame v. City of Arlington*, 575 F.3d 432, 439-41 (5th Cir. 2009).  The court expressly rejected a

"discovery rule," under which the statute would be suspended until a particular plaintiff discovered an alleged violation in a public accommodation that had been built years earlier. *See id.* at 440. As the court of appeals explained:

> If the discovery rule were applied in this case, hereafter every new potential plaintiff would constantly retrigger the [defendant's] liability for any [ADA violation], without regard to the publicly known date of its completion. * * * [T]he effect would be an evisceration of the statute of limitations defense in like ADA cases and unlimited exposure to liability.

*Id.* Thus, as the Fifth Circuit held, for a time limitation on ADA claims to have any teeth, it must start to run when the violation begins; not at the time a plaintiff first discovers it.

It is unnecessary to debate the wisdom of a discovery rule in this case because ERC and its members claim to have discovered accessibility violations at Filene's Basement stores as early as ***2005***, well outside the applicable one-year limitations period. In its original complaint against Filene's Basement, Inc., ERC alleged that one of its members visited the Connecticut Avenue store in 2005 only to find, among other alleged accessibility barriers, that the "[wheelchair] lift was not self-operable, and access to the lift was blocked by racks, boxes and clothing." Compl., *ERC v. Filene's Basement, Inc.*, No. 1:08-cv-02007-EGS, at ¶¶ 7, 13 (Dkt. #1). Plaintiff Johnson, for her part, alleged in the earlier lawsuit that she visited the Wisconsin Avenue store in 2008 and discovered a number of counters, clothing racks, and other conditions that she found insufficiently accessible. *See id.* ¶¶ 6, 16. Thus, putting aside the fact that the Filene's Basement stores — each with an assortment of conditions that plaintiffs supposedly find objectionable — have been a fixture of the District of Columbia's retail industry for more than a decade, ERC and its members have been aware of the alleged ADA violations for many years. Because this lawsuit was not filed until January 2010, long after the expiration of the one-year

limitations period, plaintiffs' claims are time-barred and should be dismissed under Federal Rule of Procedure 12(b)(6).[6]

## III.     PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF UNDER THE DCHRA.

In Count II of their amended complaint, plaintiffs seek an award of compensatory damages, punitive damages, and other relief under the DCHRA.  *See* Compl. ¶¶ 83-92.  Count II must be dismissed with prejudice under Rule 12(b)(6) because plaintiffs have not, and cannot, state a viable claim for relief under that statute.   The DCHRA prohibits many forms of discrimination, in many different contexts, but one thing that it does not do — in contrast to the ADA — is impose specific design and construction requirements for department stores and other public accommodations.  Accordingly, plaintiffs' allegations about the design and interior layout of the Filene's Basement stores, even if proven true, would not entitle them to relief under the DCHRA.[7]

### A.     The DCHRA Does Not Incorporate The ADA's Design And Construction Requirements.

The DCHRA is an amalgamation of provisions found in a number of federal statutes, including the federal Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Fair Housing Act, among others.  The Council of the District of Columbia, when it wrote and

---

[6]     Although Syms contends that the one-year statute of limitation period applies to both the DCHRA and the ADA claims in this case, plaintiffs' claims also would be untimely under the three-year limitation period that some courts in this District have applied.

[7]     Plaintiffs appear to recognize that the DCHRA can apply only to Filene's Basement locations within the District of Columbia.  *See* Compl. ¶¶ 85, 91.  As another court in this District has explained, "[t]he DCHRA prohibits discriminatory acts *within the District of Columbia*."  *Hilton Hotels*, 2009 WL 6067336, at *8 (emphasis added); *see also Matthews v. Automated Bus. Sys. & Servs., Inc.,* 558 A.2d 1175, 1180 (D.C. 1989) ("The purpose of the [DCHRA] is 'to secure an end *in the District of Columbia* to discrimination for any reason other than that of individual merit * * *.'" (quoting current D.C. Code § 2-1401.01)).  Thus, the DCHRA cannot apply to stores outside the District.

later amended the DCHRA, did not adopt the entirety of each federal statute that it reviewed. Instead, it selected certain provisions and eschewed others.  As a result of this process, the DCHRA "is different from the federal statutes in * * * significant ways."  *East v. Graphic Arts Indus. Joint Pension Trust*, 718 A.2d 153, 159 (D.C. 1998).

Most notably, the general provision of the DCHRA under which plaintiffs sue, D.C. Code § 2-1402.31(a), was written well over a decade *before* Congress enacted the ADA.  What is now Section 2-1402.31(a)(1) was first enacted in 1973 as Title 34, § 15.1 of the D.C. Rules & Regulations, and has remained substantially unchanged since.  *See* D.C. Reg. No. 73-22, § 15.1 (Nov. 17, 1973).  In 1977, following the grant of home rule to the District, the D.C. Council codified these regulations as the D.C. Human Rights Act.  *See* D.C. Law 2-38, title II, § 231, 24 DCR 6038 (Dec. 13, 1977); *Blodgett v. Univ. Club*, 930 A.2d 210, 218 n.4 (D.C. 2007).  But the ADA was not enacted until 1990.  *See* Pub. L. No. 101-336, 104 Stat. 327, 355 (July 26, 1990). Needless to say, when the D.C. Council first drafted Section 2-1402.31 in 1973, and later codified it in 1977, it could not possibly have anticipated, and adopted *sub silentio*, the design and construction requirements of a federal statute that Congress would enact many years later.

Rather, a comparison of the statutory language confirms that Section 2-1402.31(a) of the DCHRA has its origin in Title II of the Civil Rights Act of 1964.  The DCHRA, in relevant part, prohibits owners from denying any person, on the basis of a protected characteristic, "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations." D.C. Code § 2-1402.31(a)(1).  This language mirrors Title II's prohibition on discrimination in places of public accommodation.  *See* 42 U.S.C. § 2000a(a) ("All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public

accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.").

When it was enacted in 1990, the ADA added an entirely new dimension to the federal prohibition against discrimination in places of public accommodation.  Title III of the ADA specifically requires owners of public accommodations to "remove architectural barriers * * * where such removal is readily achievable," and, when removal is not readily achievable, owners are to "make such goods, services, facilities, privileges, advantages, or accommodations available through alternative means if such methods are [themselves] readily achievable."  42 U.S.C. §§ 12182(b)(2)(A)(iv), (v).  To facilitate compliance with the ADA's accessibility requirements, the Department of Justice promulgated comprehensive regulations defining the standards for various design features in public accommodations including, for example, the pile thickness of carpets (*see* 28 C.F.R. § 36.101, Appx. A, ADA Accessibility Guidelines, § 4.5.3), the location, slope, width, and surface of curb ramps (*see id.* § 4.7), and the dimensions, design, hardware, closing speed, and opening force of doors (*see id.* § 4.13).

Nothing in the DCHRA adopts the ADA's accessible design requirements for public accommodations.  Nor do the D.C. regulations implementing the DCHRA establish any requirements for the design and construction of new public accommodations or the removal of accessibility barriers in existing facilities.  *See* D.C. Mun. Regs. tit. 4.  Thus, defendants cannot be held liable for violating a purported statutory duty that simply does not exist anywhere in the text of the statute or its implementing regulations.

ERC and its members cannot argue that the D.C. Council has somehow adopted the ADA's design and construction requirements *sub silentio*.  Any such inference is squarely foreclosed by the approach that the Council took when adding portions of the Fair Housing Act

("FHA") amendments into the DCHRA.  When the D.C. Council first passed the DCHRA, it incorporated many of the provisions contained in the FHA as it was originally enacted.  *Compare* D.C. Law 2-38, tit. II, § 221, 24 DCR 6038 (Dec. 13, 1977), *presently codified at* D.C. Code. § 2-1402.21 *and* D.C. Reg. No. 73-22, §§ 13.1-13.4 (Nov. 17, 1973), *with* Pub. L. No. 90-284, tit. VIII, § 804, 82 Stat. 73 (Apr. 11, 1968), *presently codified at* 42 U.S.C. §§ 3601 *et seq.*.  In 1988, Congress amended the FHA to establish accessible design requirements for multifamily housing developments.  *See* Pub. L. No. 100-430, § 6(a), 102 Stat. 1619 (Sept. 13, 1988).  For instance, federal law now mandates that all "doors designed to allow passage into and within all premises within such dwellings [must be] sufficiently wide to allow passage by handicapped persons in wheelchairs," and that "usable kitchens and bathrooms [must be provided] such that an individual in a wheelchair can maneuver about the space."  42 U.S.C. § 3604(f)(3)(C).  Ten years later, the D.C. Council incorporated, nearly verbatim, all of the newly-created FHA accessibility requirements into the DCHRA.  *See* D.C. Law 12-242 § 2 (Dec. 13, 1998), *presently codified at* D.C. Code. § 2-1402.21(d)(3).

This is powerful evidence that the Council knows how to establish detailed accessible design requirements, as well as how to amend the DCHRA to mirror new federal civil rights statutes when, in its legislative judgment, it is appropriate to do so.  The Council specifically chose to incorporate into the DCHRA the affirmative design standards for multifamily housing developments contained in the 1988 FHA amendments.  But the Council elected not to amend the DCHRA again following the enactment of the ADA in 1990 in order to adopt the new federal accessible design standards for public accommodations.  That legislative judgment can only be understood to have been deliberate.  "Nothing, indeed, but a different intent explains the different treatment." *Lindh v. Murphy*, 521 U.S. 320, 329 (1997) (explaining that when separate

sections of a statute address similar issues, any differences in treatment are presumed to be deliberate).  Thus, this Court should reject plaintiffs' attempt to pursue a cause of action that the D.C. Council has not chosen to create.

### B.  Plaintiffs Seek To Apply The DCHRA In A Manner That Is Unconstitutionally Vague.

Not only is plaintiffs' reading of the DCHRA wrong on its face but, if accepted by this Court, it would call into question the constitutionality of the statute.  Because nothing in the statute suggests that the DCHRA creates affirmative design and construction requirements for places of public accommodation, plaintiffs' application of the DCHRA would — as applied here — render the statute unconstitutionally vague and thus void.  Syms' construction of the statute therefore must be favored as it avoids any constitutional infirmity.  *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice.  If one of them would raise a multitude of constitutional problems, the other should prevail * * *."); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.").

The void-for-vagueness doctrine prohibits penalizing a party for conduct that was not clearly proscribed by the relevant statute.  As the Supreme Court has long-explained:

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.  Vague laws offend several important values.  First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.  Vague laws may trap the innocent by not providing fair warning.  Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic

policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972); *see also Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."). And this doctrine applies to civil matters as well as criminal. *Boutilier v. INS*, 387 U.S. 118, 123 (1967) ("It is true that this Court has held the 'void for vagueness' doctrine applicable to civil as well as criminal actions.").

The DCHRA does not provide owners of public accommodations with ***any notice*** that a narrow doorway, a missing handrail, an inoperable wheelchair lift, or other building conditions may give rise to a lawsuit seeking compensatory damages, punitive damages, attorney's fees, and other relief. As explained, the statute merely prohibits an owner from denying any person, on the basis of a protected characteristic (such as race, religion, sex, age, sexual orientation—as well as disability), "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations." D.C. Code § 2-1402.31(a). A person of common intelligence could not reasonably predict that this general language imposes specific design and construction requirements that are not defined anywhere in the statute or its implementing regulations.

Indeed, reasonable expectations are informed by the other statutes that *do* create affirmative design requirements. When Congress wished to establish design and construction requirements in the ADA, it did so through express statutory provisions (*see* 42 U.S.C. §§ 12182(b)(2)(A)(iv), (v)), which have been further clarified through regulation (*see* 28 C.F.R. § 36.101, Appx. A). And, as we explained, when the D.C. Council sought to create design

requirements for residential units, it too acted expressly by adopting the relevant provisions of the FHA.  *See* D.C. Code. § 2-1402.21(d)(3).  Particularly in the face of such express affirmative guidance, a reasonable person could not anticipate that the general prohibition against discrimination in the DCHRA establishes these sorts of specific design requirements.  Because plaintiffs' interpretation of the statute would — as applied here — render it unconstitutionally vague, that interpretation must be rejected.

## CONCLUSION

Accordingly, defendants respectfully request that this Court dismiss plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6).

Respectfully submitted,

   /s/ Andrew A. Nicely
Andrew A. Nicely (D.C. No. 458805)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C.  20006
(202) 263-3000
anicely@mayerbrown.com

*Counsel for defendants Syms Corp. & Filene's Basement, LLC*

Dated:  June 4, 2010

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served electronically by means of the Court's CM/ECF electronic filing system on June 4, 2010, on all counsel of record.


    s/ Andrew A. Nicely
          Andrew A. Nicely