UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE EQUAL RIGHTS CENTER, MARSHA
JOHNSON, and REGINA LEE,

      Plaintiffs,

      v.

SYMS CORP and FILENE'S BASEMENT,
LLC F/K/A SYL, LLC,

      Defendants.

**Civil No. 1:10-cv-00161-EGS**
Assigned to:   Sullivan, Emmet G.
Assign. Date: 1/26/2010
Description:   Civil Rights- Non Employ

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page(s)**

Table of Authorities .................................................................................................... ii

Introduction ............................................................................................................... 1

Background ............................................................................................................... 2

Argument ................................................................................................................... 4

I.  The Plaintiffs Have Standing ........................................................................... 4

    A.  Marsha Johnson and Regina Lee Have Standing .................................... 5

    B.  The ERC Adequately Alleges Both Associational and Organizational
        Standing .................................................................................................. 7

        1.  ERC Has Associational Standing to Assert Its ADA and DCHRA
            Claims ............................................................................................ 7

        2.  The ERC Also Has Adequately Pled Organizational Standing .......... 9

    C.  The ERC Can Assert Its DCHRA Claim Because Standing Under the
        DCHRA is Co-Extensive With Constitutional Standing ........................ 13

II.  Plaintiffs' Claims Are Not Time-Barred ........................................................... 14

    A.  The ADA Claims Are Governed by a Three-Year Statute of Limitations ........... 14

    B.  The Statute of Limitations Has Not Begun To Run Because the Barriers in
        Defendants' Stores Are Continuing Violations ...................................... 16

    C.  The Discovery Rule – Not the Date of Construction – Governs When the
        Statute of Limitations Begins to Run for ADA Claims .......................... 17

III.  Plaintiffs State A Claim Under the DCHRA .................................................... 19

    A.  ERC Does Not Seek to Apply the ADA's Design Standards to the
        DCHRA ................................................................................................. 20

    B.  Plaintiffs Have Stated a Claim For Relief Under the DCHRA .............. 22

Conclusion ................................................................................................................. 23

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, M.D.*, 469 F.3d 129 (D.C. Cir. 2006)............................................................................................................... passim

*Alston v. District of Columbia*, 561 F. Supp. 2d 29 (D.D.C. 2008)............................................... 20

*Bacon v. City of Richmond*, 386 F. Supp. 2d 700 (E.D. Va. 2005), *later proceeding*, 419 F. Supp. 2d 849 (E.D. Va. 2006), *later proceeding rev'd on other grounds*, 475 F.3d 633 (4th Cir. 2007) ....................................................................................................................................................... 6

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192 (1997) ........................................................................................................................................ 18

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 22

*Bendik v. Credit Suisse First Boston (USA), Inc.*, No. 02-9554, 2004 WL 736852 (S.D.N.Y. Apr. 5, 2004)...................................................................................................................................... 18

*Bennett v. Spear*, 520 U.S. 154 (1997) ......................................................................................... 4

*Bodley v. Macayo Rests., LLC*, 546 F. Supp. 2d 696 (D. Ariz. 2008) ......................................... 17

*Borbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78 (D.D.C. 2008) ...................................... 11

*Burkhart v. Widener Univ., Inc.*, 70 Fed. Appx. 52 (3d Cir. 2003) ............................................. 18

*Celano v. Marriott Int'l, Inc.*, No. 05-4004, 2008 WL 239306 (N.D. Cal. Jan. 28, 2008)............ 6

*City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1 (D.D.C. 2008)............................... 19, 20

*Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336 (D.C. 1991)............................................... 18

*DiLella v. Univ. of D.C.*, 570 F. Supp. 2d 1 (D.D.C. 2008).......................................................... 15

*Equal Rights Center v. AvalonBay Communities, Inc.,* No. AW-05-2626, 2009 WL 1153397 (D. Md. Mar. 23, 2009) .......................................................................................................... 11, 12

*Equal Rights Center v. Equity Residential*, 483 F. Supp. 2d 482 (D. Md. 2007) ................... 11, 12

*Equal Rights Center v. Filene's Basement, Inc.*, No. 1:08-cv-02007 (D.D.C. filed Nov. 21, 2008) ................................................................................................................................................ 3, 9

*Equal Rights Center v. Hilton Hotels Corp.* No. 07-1528, 2009 WL 6067336 (D.D.C. Mar. 25, 2009)...................................................................................................................................... passim

*Equal Rights Center v. Post Props., Inc.*, 657 F. Supp. 2d 197 (D.D.C. 2009)............................ 10

*Frame v. City of Arlington*, 575 F.3d 432 (5th Cir. 2009)............................................................ 18

*Gladstone Realtors v. Village of Bellwood*, 41 U.S. 91 (1979) .................................................... 12

*Goana v. Town & Country Credit*, 324 F.3d 1050 (8th Cir. 2003) ............................................. 16

*Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987) ...................................................... 14, 15, 16

*Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999)............................................................ 18

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ................................................ 10

*Holland v. Bd. of Trustees of Univ. of D.C.*, 794 F. Supp. 420 (D.D.C. 1992) ............................ 17

*Hunt v. Was. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) .................................................. 8

*Innovative Health Sys. Inc. v. City of White Plains*, 117 F.3d 37 (2d Cir. 1997) ........................ 13

*Kimes v. Stone*, 84 F.3d 1121 (9th Cir. 1996)................................................................. 18

*Long v. Howard University*, 512 F. Supp. 2d 12 (D.D.C. 2007) ................................................ 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................... 4

*Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97 (D.D.C. 2009)................................... 14

*Molvinsky v. Fair Employment Council of Greater Wash., Inc.*, 683 A.2d 142 (D.C. 1996)....... 13

*Nat'l Fair Housing Alliance v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46 (D.D.C. 2002).. 11

*Nat'l Taxpayers Union, Inc. v. U.S.*, 68 F.3d 1428 (D.C. Cir. 1995) ........................................... 9

*National Comty. Reinvestment Coalition v. Accredited Home Lenders Holding Co.*, 573 F. Supp. 2d 70 (D.D.C. 2008)..................................................................... 10

*Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002) ................................... 6, 17

*Potts v. Howard Univ. Hosp.*, 258 Fed. Appx. 346 (D.C.Cir. 2007) ........................................... 20

*Public Citizen v. F.T.C.*, 869 F.2d 1541 (D.C. Cir. 1989) ............................................... 9

*Rawlings v. Ray*, 312 U.S. 96 (1941) ...................................................................... 18

*Rouse v. Berry*, 680 F. Supp. 2d 233 (D.D.C. 2010) ......................................................... 20, 22

*Ruff v. Runyon*, 258 F.3d 498 (6th Cir. 2001)................................................................ 18

*Schonfeld v. City of Carlsbad*, 978 F. Supp. 1329 (S.D. Cal. 1997)............................................ 17

*Spann v. Colonial Village, Inc.* 899 F.2d 24 (D.C. Cir 1990)................................................. 10

*Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111 (D.C.Cir. 2000)............................................. 20

*Stewart v. District of Columbia* No. 04-1444, 2006 WL 626921 (D.D.C. Mar. 12, 2006) .......... 18

*Toney v. U.S. Healthcare, Inc.*, 840 F.Supp. 357 (E.D.Pa. 1993) ................................................ 19

*TwoRivers v. Lewis*, 174 F.3d 987 (9th Cir. 1999) .................................................... 18

*U.S. Women's Chamber of Commerce v. U.S. Small Bus. Admin.*, No. 04-01889, 2005 WL 3244182 (D.D.C. Nov. 30, 2005).............................................................. 5

*Wallace v. Kato*, 549 U.S. 384 (2007) ...................................................................... 18

*Williams v. Savage*, 538 F. Supp. 2d 34 (D.D.C. 2008) .................................................... 15

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

## STATUTES

42 U.S.C. § 12188(a)(1) ................................................................................................. 1, 6, 12

42 U.S.C. §§ 12181 ................................................................................................................... 2

D.C. Code § 2-1042.3(1)(a)(1) .............................................................................................. 21

D.C. Code § 2-1403.16 ........................................................................................................... 15

D.C. Code Ann. §§ 2-1401 ....................................................................................................... 2

## REGULATIONS

28 C.F.R. Part 36 ....................................................................................................................... 3

## INTRODUCTION

Plaintiffs brought this suit to address serious civil rights violations by Filene's Basement, LLC and its parent Syms Corp against people with disabilities.   Rather than disputing that Filene's Basement and Syms Corp have discriminated against people with disabilities and operate their stores in violation of the Americans with Disabilities Act and D.C. law, they now seek to preclude this case from proceeding arguing that some Plaintiffs lack standing, some claims are time-barred (if the Court will discard the currently accepted standard in this District), and its DCHRA claim is deficient (if the Court will ignore the well-pleaded allegations in the Complaint).   Defendants' motion is fatally flawed on the law and is nothing more than an attempt to further delay a resolution of these claims on the merits (similar to the Defendants' simultaneously filed motion to stay discovery).   The motion to dismiss should be denied.

*Standing.*   Plaintiffs have standing to assert both their ADA and DCHRA claims. Defendants concede that Plaintiffs Marsha Johnson and Regina Lee have standing to assert their claims related to two Filene's Basement stores, but seek to limit their ability to assert claims related to other Filene's Basement stores in the area.   This argument fails because the ADA does not require a person with a disability to make a futile effort of attempting to shop at a store she knows is inaccessible.   42 U.S.C. § 12188(a)(1).   And the ERC plainly satisfies the *Hunt* test for associational standing.   Defendants ask this Court to import additional restrictions on associational standing that have not been accepted by courts in this District and should not be accepted.   Finally, the ERC submits that its injuries, as specified in the Plaintiffs' First Amended Complaint ("Complaint"), satisfy the requirements for it to have organizational standing.

*Statute of Limitations.*   Numerous courts in this District have held that the statute of limitations for ADA claims in the District of Columbia is three years.   Defendants ask this Court to ignore those decisions and adopt a one-year statute of limitations.   The Court should reject that

invitation.  Significantly, the Defendants' motion must be denied under either standard because the Plaintiffs brought suit within one year.

   ***DCHRA.***  Defendants create the proverbial straw man by asserting that Plaintiffs fail to state a claim under the DCHRA because the Plaintiffs are "improperly" attempting to import ADA accessibility standards into the DCHRA.  Not so.  The Plaintiffs do nothing of the sort. Instead, the Plaintiffs assert DCHRA claims against the Defendants for their discriminatory practices detailed in the Complaint.

   The Court should deny Defendants' motion to dismiss.

## BACKGROUND

   Plaintiffs bring this suit against Syms Corp ("Syms") and its wholly-owned subsidiary, Filene's Basement, LLC, for their violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* and the District of Columbia Human Rights Act, D.C. Code Ann. §§ 2-1401 *et seq.*  Defendants maintain policies and practices at Filene's Basement stores that unfairly discriminate against persons with disabilities.  1st. Am. Compl. ¶¶ 1-6 (Dkt. # 12).[1]

   The ERC is a non-profit organization existing under D.C. law.  The ERC is a membership organization; its members include "individuals, including persons with disabilities, who have a direct interest in protecting the rights of persons with disabilities."  ¶ 12.  One key component of the ERC's mission is to pursue equal access for persons with disabilities, including ERC members such as Plaintiffs Marsha Johnson and Regina Lee, both of whom have mobility impairments that require them to use wheelchairs.  ¶¶ 12-14.  To achieve the ERC's goals, it pursues a variety of activities, including research, outreach and education, counseling of individuals with disabilities, and advocacy and enforcement.  ¶ 12.

---

[1] All citations using the citation (¶ _) refer to the First Amended Complaint.

Marsha Johnson and the ERC brought suit against the prior owner of Filene's Basement stores – Filene's Basement, Inc. – in 2008, the very same year that they became aware of the inaccessibility of Filene's Basement stores to people with disabilities. *Equal Rights Center v. Filene's Basement, Inc.*, No. 1:08-cv-02007 (D.D.C. filed Nov. 21, 2008).

After Filene's Basement, Inc. entered into bankruptcy, Syms and Filene's Basement, LLC purchased substantially all of the assets of Filene's Basement, Inc. on June 18, 2009, and became the new owners and operators of Filene's Basement. ¶ 1. Approximately four months later, on October 1, 2009, Marsha Johnson visited another Filene's Basement store, hopeful that Syms would have addressed the accessibility barriers she had encountered in the prior owner's stores. ¶ 19. They had not. This time, Ms. Johnson could not even get past the front doors because the wheelchair lift was not working. After entering through the back door of the store, she encountered numerous accessibility barriers inside the store. ¶¶ 20-21. Ms. Johnson alerted the ERC of her experiences and the ERC again diverted scarce resources to begin an investigation of Filene's Basement stores. ¶ 31-32.

Building upon Ms. Johnson's experiences and using a number of survey-takers who evaluated Defendants' compliance with the Standards for Accessible Design, Appendix A of the U.S. Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36 (revised July 1, 1994), the ERC determined that Defendants were not in compliance with the ADA and were also violating the DCHRA. ¶ 32. Significantly, the ERC found serious obstacles and practices interfering with the civil rights of individuals with disabilities who tried to patronize Defendants' stores, including among others:

- Entrances, including wheelchair lifts, that are not accessible or operable;

- Paths of travel around the storeroom floor that are not accessible to persons in wheelchairs or otherwise mobility-impaired;

- Customer service and checkout counters that are too high or otherwise inaccessible to persons in wheelchairs or mobility impaired;

- Fitting rooms that do not have accessible doors or benches for disabled persons;

- Restrooms that are not located on accessible routes.

¶32; *see also* ¶ 42-43.

The ERC and Marsha Johnson filed suit against Defendants within four months of discovering that Defendants were maintaining accessibility barriers and unlawful practices at Filene's Basement stores.   ¶ 19, 31.   Regina Lee, who also uses a wheelchair for mobility, encountered her own difficulties at the Mazza Gallerie Filene's Basement store after the Complaint had been filed and later joined as a Plaintiff.   ¶ 25.

## ARGUMENT

### I.   THE PLAINTIFFS HAVE STANDING

In order for a federal court litigant to have standing, Article III of the Constitution "requires, at the 'irreducible constitutional minimum,' that the litigant has suffered a concrete and particularized injury that is actual or imminent, traceable to the challenged act, and redressable by the court."   *Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, M.D.*, 469 F.3d 129, 132 (D.C. Cir. 2006) (reversing district court's dismissal for lack of standing and finding that the advocacy group had standing to challenge FDA regulations), *rehearing en banc granted for separate issue*, 495 F.3d 695 (D.C. Cir. 2007), *cert. denied*, 128 S. Ct. 1069 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992)).   In addition to the Article III requirements, courts also may look to prudential considerations in determining whether or not a litigant should have standing to press its claims. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997) (in evaluating standing a court must consider

whether the aggrieved party's claim falls within the "zone of interests protected or regulated by the statutory provision.").

When considering a motion to dismiss for lack of standing, courts must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. *U.S. Women's Chamber of Commerce v. U.S. Small Bus. Admin.*, No. 04-01889, 2005 WL 3244182, *3 (D.D.C. Nov. 30, 2005) (denying motion to dismiss for lack of standing against membership organization). General factual allegations of injury resulting from a defendant's conduct may suffice, and the court must presume that general allegations embrace those specific facts that are necessary to support the claim. *Id.* Defendants do not challenge the veracity of the allegations or submit any evidence of their own. Instead, Defendants argue only that Plaintiffs' well-pleaded allegations are insufficient as a matter of law to establish standing.

Plaintiffs' allegations in their Complaint, taken as true and presumed to embrace specific facts, establish that Marsha Johnson, Regina Lee, and the ERC have standing to pursue their ADA and DCHRA claims.

### A.     Marsha Johnson and Regina Lee Have Standing

Defendants do not dispute that Ms. Johnson and Ms. Lee have standing to assert their claims concerning the Connecticut Avenue and Wisconsin Avenue stores, respectively. Mot. to Dismiss at 16. Defendants contend, however, that Ms. Johnson and Ms. Lee's claims must be limited to those two specific stores and not encompass other Filene's Basement stores in the area. That is incorrect.

The ADA explicitly provides that a person with a disability does not need to make a futile gesture of attempting to shop at a store she knows is inaccessible in order to assert standing with respect to that store. Specifically, the ADA provides: "nothing is this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person

or organization covered by this subchapter does not intend to comply with its provisions." 42 U.S.C. § 12188(a)(1). A person with a disability who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered an actual injury and has standing to sue for injunctive relief. *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002).

This is especially true where the store is one in a chain of stores, the individual with a disability has encountered barriers at another store in that chain, and the individual knows that the chain has barriers in its stores. *See, e.g., Celano v. Marriott Int'l, Inc.*, No. 05-4004, 2008 WL 239306 at *1, 6-7 (N.D. Cal. Jan. 28, 2008) (finding that three disabled individuals had standing to sue all twenty-six Marriott-owned or operated golf courses on a nationwide basis, and rejecting Marriott's argument that standing was limited to courses that the individuals had actually visited because "deterrence alone provides sufficient injury in fact"); *Bacon v. City of Richmond*, 386 F. Supp. 2d 700, 705 (E.D. Va. 2005), *later proceeding*, 419 F. Supp. 2d 849 (E.D. Va. 2006), *later proceeding rev'd on other grounds*, 475 F.3d 633 (4th Cir. 2007) (four plaintiffs had standing to challenge accessibility barriers at every school in Richmond because the ADA does not require "a handicapped plaintiff…to suffer the public humiliation of unsuccessfully attempting to enter a public school facility in order to have standing")*; Equal Rights Center v. Hilton Hotels Corp.* No. 07-1528, 2009 WL 6067336 at *3 (D.D.C. Mar. 25, 2009). In *Hilton Hotels*, Judge Robertson found that an individual with a disability had standing to bring claims against D.C. area Hilton Hotels he had not visited because he had encountered barriers at other Hilton Hotels first-hand, plaintiffs generally pled knowledge of barriers at other Hiltons (and such knowledge could safely be imputed to the individual plaintiff), and the individual had established his desire to stay at any one of the Hiltons but for the barriers. *Id.*

Here, Plaintiffs Johnson and Lee allege that have been injured at certain Filene Basement stores and they are currently deterred from shopping at certain Filene's Basement stores defined as the "D.C. Metro Stores", ¶¶ 22, 24, 30.  They allege they are deterred because they are aware of the discriminatory practices at the "D.C Metro Stores," including lack of wheelchair access to the basement level, ¶ 34, a wheelchair lift that cannot be operated independently and that is blocked by merchandise, *id.*, inaccessible interior paths of travel blocked by merchandise and other items, ¶ 35, customer service counters that are too high for customers who use wheelchairs to reach or use, ¶ 36, inaccessible fitting rooms, ¶ 37, and inaccessible restrooms, ¶ 38.  Plaintiffs Johnson and Lee also make good faith allegations of their intention to shop at Filene's Basement stores.   ¶ 22-23, 28-29.  Plaintiffs' allegations are sufficient to sue the Defendants related to the "D.C. Metro Stores" under the ADA.

**B.      The ERC Adequately Alleges Both Associational and Organizational Standing**

The ERC has alleged a concrete and particularized injury in fact which is caused by Defendants' discriminatory practices, and which would be redressed by injunctive relief, declaratory relief, and damages.  Courts have long recognized that an organization may assert assert ***associational standing*** and bring claims on behalf of its members; it may also assert ***organizational standing*** and bring claims on its own behalf.  *Abigail Alliance*, 469 F.3d at 132-33.   As explained below, ERC satisfies the requirements for both associational and organizational standing.

**1.   <u>ERC Has Associational Standing to Assert Its ADA and DCHRA Claims</u>**

The standard for establishing associational standing is well-settled:  an organization has associational (or representational) standing if it can show that (1) its members would otherwise have standing to sue in their own right, (2) the interests it seeks to protect are germane to the

organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.  *Hunt v. Was. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *see also Abigail Alliance*, 469 F.3d at 133.  In their brief, the Defendants state the *Hunt* test but then misapply it to argue that the ERC does not satisfy the test. When *Hunt* is properly applied to Plaintiffs' allegations, the ERC plainly has associational standing.

The ERC has satisfied the first prong of the *Hunt* test:  the ERC's members would otherwise have standing to sue in their own right.  The two individual plaintiffs in this lawsuit, Marsha Johnson and Regina Lee, are ERC members, ¶¶ 13-14, and their standing is not disputed. *See* Mot. to Dismiss at 16; *see also supra* § I.A.  This is enough to satisfy the first prong of the *Hunt* test.  Just last year, Judge Robertson applied the *Hunt* standard and found that the ERC had associational standing to sue under Title III of the ADA based on the named plaintiff being a member.  *Hilton Hotels*, 2009 WL 6067336 at *5.

Defendants urge this Court to add additional steps to the *Hunt* test citing a case from the Southern District of New York and a case from the District of New Hampshire.  Specifically, Defendants argue that an organization cannot assert associational standing on behalf of a named plaintiff, but rather must show specific injuries to other members.  *See* Mot. to Dismiss at 13-14. That is not consistent with the *Hunt* test and is not consistent with Judge Robertson's decision in *Hilton Hotels.*  Judge Robertson found that the ERC satisfied the first factor of the *Hunt* test based on a single named plaintiff in that suit.  *See Hilton Hotels*, 2009 WL 6067336 at *5 ("Plaintiff Fiedler is a member of the ERC" . . .  and the "parties do not dispute that the ERC [ ] ha[s] associational standing to represent these individual claims.").  In any event, as Plaintiffs allege, other ERC members have encountered barriers at Defendants' stores.  ¶ 51.  These ERC

members include Charla Ramsey, who was a named plaintiff in a lawsuit against the prior owner of Filene's Basement. *See The Equal Rights Center v. Filene's Basement, Inc.,* No. 1:08-cv-02007.

Defendants do not even dispute that the ERC satisfies the second and third prongs of the *Hunt* test. The interests the ERC seeks to protect are plainly and evidently germane to the organization's purpose, and neither the claims asserted by the ERC nor the relief sought by the ERC requires the participation of individual members in the lawsuit. The ERC has sufficiently pled associational standing by describing its membership and mission, ¶ 12, and by alleging that its members were injured by Defendants' discriminatory practices, *id.* ¶¶ 12, 17-30, 51. The relevant case law requires no more. *Hilton Hotels,* 2009 WL 6067336; *Nat'l Taxpayers Union, Inc. v. U.S.,* 68 F.3d 1428, 1435 (D.C. Cir. 1995) (organizational standing where at least one represented member would be affected by challenged higher estate and gift taxes); *Public Citizen v. F.T.C.,* 869 F.2d 1541, 1551-52 (D.C. Cir. 1989) (similar). The ERC's well-pled factual allegations in the Complaint are sufficient to establish associational standing and withstand Defendants' motion to dismiss.

For these reasons, the ERC has satisfied the *Hunt* test and can assert associational standing to assert its ADA and DCHRA claims.

## 2. The ERC Also Has Adequately Pled Organizational Standing

While the ERC's associational standing is enough to withstand Defendants' motion to dismiss, the ERC also has organizational standing to assert claims on its own behalf.

The ERC has organizational standing because it alleges that it has diverted resources to identify and counteract Defendants' unlawful practices, ¶ 52(a); its mission has been frustrated by Defendants' unlawful practices, ¶ 52(b); and Defendants have interfered with the ERC's interests and those of the ERC's members, ¶ 52(c). The ERC submits that these allegations are

sufficient to establish that the ERC has organizational standing.  *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (housing advocacy organization had standing where it alleged that defendants' practices had "frustrated" the organization's efforts "to assist equal access to housing" and that it "had to devote significant resources to identify and counteract" the defendants' unlawful housing practices); *Spann v. Colonial Village, Inc.* 899 F.2d 24, 28 (D.C. Cir 1990) (housing advocacy organization had standing where it alleged that defendants' illegal advertisements required the organization to devote scarce resources to identify and counteract defendants' advertising practices and necessitated increased education efforts).

Moreover, the ERC's injury is not merely a "willful" diversion of funds towards investigating and prosecuting the claims brought here as Defendants assert.  *See* Mot. to Dismiss at 7-8.  Plaintiffs also allege that in the wake of Defendants' discriminatory practices, the ERC has had to provide education, counseling and other outreach services to its members and the community, "[i]n an effort to ameliorate the effects of discrimination against persons with disabilities, and to prevent the recurrence of discrimination in the future."  ¶ 12.  These allegations distinguish this matter from *Equal Rights Center v. Post Props., Inc.*, 657 F. Supp. 2d 197 (D.D.C. 2009).  Under *Havens* and cases following that decision from the Supreme Court, such an injury qualifies the ERC for organizational standing.  *See Abigail Alliance*, 469 F.3d at 132-133 (finding organizational standing where plaintiff had pled that the challenged FDA regulations "caused a drain on [its] resources and time" because plaintiff had to help "its members and the public address the unduly burdensome requirements that the FDA imposes on experimental treatments."); *National Comty. Reinvestment Coalition v. Accredited Home Lenders Holding Co.*, 573 F. Supp. 2d 70, 74 (D.D.C. 2008) (finding organizational standing where plaintiff advocacy organization alleged that defendants' policies had "frustrated its

mission by causing it to devote scarce resources to education and outreach programs to counteract these policies"); *Nat'l Fair Housing Alliance v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 52-53 (D.D.C. 2002) (plaintiff had organizational standing because it had alleged it was forced to divert resources in order to educate homeowners and the general public regarding discrimination in residential property housing).

The D.C. Circuit took pains to note in *Abigail Alliance* that the Court of Appeals "has distinguished between organizations that allege that their activities have been impeded from those that merely allege that their mission has been compromised" and that the organization had "met this threshold by alleging that it actively engages in 'counseling, referral, advocacy, and educational services.'" *Abigail Alliance*, 469 F.3d at 133. So too here: the ERC provides "counseling, outreach and education, and referral services" to its members with disabilities; those services have been both instigated and thwarted by Defendants' conduct, giving rise to the ERC's organizational injury. ¶12.

And several courts have found that the ERC had organizational standing in other cases in which the organization made allegations similar to those asserted here. *See Equal Rights Center v. AvalonBay Communities, Inc.,* No. AW-05-2626, 2009 WL 1153397, * 6 (D. Md. Mar. 23, 2009) (finding that the ERC had established constitutional standing by alleging facts that demonstrated that the defendants' actions had caused the ERC to divert resources and had frustrated their mission); (*Equal Rights Center v. Equity Residential*, 483 F. Supp. 2d 482, 487 (D. Md. 2007) (same); *Borbeau v. Jonathan Woodner Co.*, 549 F. Supp. 2d 78, 85 (D.D.C. 2008) (finding that the ERC had constitutional standing to bring suit under the DCHRA).

Defendants argue that "prudential" concerns should prevent the ERC from asserting organizational standing, because Title III of the ADA purportedly only creates a cause of action

in favor of natural persons who have experienced discrimination, not organizations.  *See* Mot. to Dismiss at 11.  But the legislative history and purpose of the ADA are inconsistent with the application of prudential standing limitations to claims under Title III.  Congress intended that, under Title III, "persons with disabilities have remedies and procedures parallel to those available under comparable civil rights laws."  1990 U.S.C.C.A.N. 445, 489.  Comparable civil rights laws such as the Fair Housing Act ("FHA") do not impose prudential standing limitations. *See Gladstone Realtors v. Village of Bellwood*, 41 U.S. 91 (1979).  The ERC has successfully asserted organizational standing to challenge accessibility barriers in housing under the FHA. Like the FHA, Title III of the ADA addresses the accessibility of buildings to people with disabilities.  Because of the similarities between the FHA and the ADA, at least one court has noted that it would create an "absurdity of extraordinary proportions" if the ERC could challenge apartment units under the FHA but not common areas of buildings under Title III of the ADA. *Equity Residential*, 483 F. Supp. 2d at 487 n.7; *see also AvalonBay*, 2009 WL 1153397 at * 6. Other courts similarly have found that organizations can have standing under Title III of the ADA.  *See, e.g., Ass'n for Disabled Americans, Inc. v. Claypool Holdings LLC*, No. IPOO-0344, 2001 WL 1112109, * 1 (S.D. Ind. 2001) (noting that an organization has standing to sue under Title III of the ADA if the organization meets the requirements of Article III of the Constitution); *Indep. Living Res. v. Oregon Arena Corp.*, 982 F. Supp. 698, 760-61 (D. Or. 1997) (finding that organization had standing to sue under Title III of the ADA based on a constitutional standing analysis, and not imposing prudential standing requirements).

In *Hilton Hotels*, Judge Robertson interpreted section 12188(a)(1) of the ADA, 42 U.S.C. § 12188(a)(1), to mean that organizations may not assert organizational standing under Title III of the ADA.  *See Hilton Hotels*, 2009 WL 6067336 at *4-5.  The ERC respectfully submits that

this interpretation is too narrow.  Because the ADA extends relief to "any person" rather than "any disabled person," and consistent with Congress's intent that Title III run parallel to comparable civil rights laws, it appears that Congress did not intend to limit relief under the ADA to natural persons with disabilities.  *See Innovative Health Sys. Inc. v. City of White Plains*, 117 F.3d 37, 47, (2d Cir. 1997) (noting that the use of *any person* suggested a congressional intent to define standing as broadly as is permitted by the Constitution).

C. **The ERC Can Assert Its DCHRA Claim Because Standing Under the DCHRA is Co-Extensive With Constitutional Standing**

Once a plaintiff has satisfied the constitutional standing requirement, it may bring suit under the DCHRA.  *See Molvinsky v. Fair Employment Council of Greater Wash., Inc.*, 683 A.2d 142, 146 (D.C. 1996) (holding that standing under the DCHRA is co-extensive with constitutional standing).  Since, as explained above, the ERC meets the constitutional standing requirements by suffering an injury in fact, it has standing to sue under the DCRHA.

Defendants contend that the ERC cannot recover damages under the DCHRA because an organization *relying on associational standing* cannot recover damages.  *See* Mot. to Dismiss ¶¶ 15-16.  But the ERC does not need to rely on associational standing to bring claims under the DCHRA.  Rather, ERC is itself an *aggrieved person* under the DCHRA:  its mission has been frustrated and its resources have been diverted because of Defendants' discriminatory practices.  As such, the ERC has organizational standing to sue for damages in its own right under the DCHRA.  *See Hilton Hotels*, 2009 WL 6067336 at *8 (finding that the ERC had organizational standing under the DCHRA to the extent that known ADA violations at hotels in the District of Columbia caused its alleged injuries in fact – diversion of resources and frustration of organizational purpose).

## II.     PLAINTIFFS' CLAIMS ARE NOT TIME-BARRED

Despite numerous decisions in this District holding that the statute of limitations for ADA claims is three years, Defendants nevertheless argue that the Court should apply a one-year limitations period to Plaintiffs' ADA claims (in addition to the DCHRA claims).  But even under a more stringent one-year limitations period, Plaintiffs' claims still would not be barred because they were brought less than one year after Plaintiffs' causes of action accrued.  Moreover, because Defendants' violations are continuing, the statute of limitations will not start to run until the barriers are removed.   But even if the violations were not continuing, the statute of limitations would not have begun to run until Plaintiffs could have first maintained a suit against Defendants – after Defendants purchased Filene's Basement in June 2009.

A court should grant a pre-discovery motion to dismiss on limitations grounds *only if* the complaint on its face is conclusively time-barred, and the parties do not dispute when the limitations period began.  *See Miller v. Insulation Contractors, Inc.*, 608 F. Supp. 2d 97, 103 (D.D.C. 2009) (holding that employee's DCHRA complaint against his former employer and former supervisor was not subject to dismissal on statute of limitation grounds, even though it did not provide specific dates of alleged discriminatory acts, where nothing in the complaint foreclosed proof that discriminatory acts occurred during the limitations period).  Taking the allegations in the Complaint as true, Plaintiffs' claims are timely.

### A.     The ADA Claims Are Governed by a Three-Year Statute of Limitations

The ADA does not contain a statute of limitations.  The Supreme Court has held that when a federal statute does not contain a statute of limitations, "federal courts should select the most appropriate of analogous state statute of limitations."  *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987).  Consistent with this ruling, courts in this District have repeatedly held that the District of Columbia's three-year statute of limitations for personal injury lawsuits applies in

non-employment ADA cases, such as the one here.  *DiLella v. Univ. of D.C.*, 570 F. Supp. 2d 1, 8 (D.D.C. 2008); *Williams v. Savage*, 538 F. Supp. 2d 34, 39-40 (D.D.C. 2008); *Long v. Howard University*, 512 F. Supp. 2d 1, 12 (D.D.C. 2007).

While Defendants now argue that the one-year limitations period found in the DCHRA, D.C. Code § 2-1403.16, should govern Plaintiffs' ADA claims as well, *see* Mot. to Dismiss at 20-21, courts in this District have rejected that argument in non-employment ADA cases.  *See, e.g., Di Lella*, 570 F. Supp. 2d at 8 ("Defendants also assert that Di Lella's [ ] one-year statute of limitations applies to Di Lella's ADA claims . . . Defendants are wrong.  In the District of Columbia, the three-year personal injury statute of limitations applies to non-employment claims of discrimination brought pursuant to the ADA.")

Defendants cite the phrase – "the D.C. Circuit has not addressed the issue" – from the middle of the sentence in *Williams* decision to imply that the proper statute of limitations issue for ADA claims in the District of Columbia is unsettled.  Mot. to Dismiss at 19 n.5.  In reality, the court expressly rejected applying the DCHRA's one-year statute of limitations to an ADA claim in favor of applying the three-year period in *Williams*.  *See* 538 F. Supp. 2d at 40.  The complete sentence reads, "Although the D.C. Circuit has not addressed the issue, the district has applied D.C.'s three-year statute of limitations period for personal injury actions to nonemployment claims under the ADA." *Id.* at 40.  Moreover, the Court goes on in the next sentence to state, "The court finds no reason to depart from this plotted course and rejects the D.C. defendants' proposed one-year limitation period." *Id.*

Defendants ask this Court to depart from its "plotted course" and instead to embrace a Fourth Circuit standard – a minority view.  "Since the Supreme Court's ruling in *Goodman* [*v. Lukens Steel Co.*, 482 U.S. 660 (1987)], most Courts of Appeals, with the exception of the

Fourth Circuit, have applied the state statute of limitations for personal injury actions to claims under…the ADA." *Id.* at 39 (citing *Goana v. Town & Country Credit*, 324 F.3d 1050, 1055 (8th Cir. 2003)).  There is no reason for the Court to adopt the incorrect statute of limitations that Defendants urge.  And, even under this more stringent standard, the Plaintiffs have brought their claims within one year.

In an attempt to muddle the issue, Defendants improperly conflate the earlier action before this Court that the ERC and Johnson filed against the prior owner of the Filene's Basement stores to claim that Plaintiffs' claims are stale.  *See* Mot. to Dismiss at 22.  Marsha Johnson and the ERC timely filed suit against the previous owner, Filene's Basement, Inc., for injunctive relief and damages.  That suit remains in this Court, and pending the resolution of the bankruptcy, Marsha Johnson and the ERC may seek damages from the previous owner for violations occurring during its ownership of Filene's Basement.  But Plaintiffs can no longer seek injunctive relief from the previous owner because that party is no longer in a position to remove the accessibility barriers at Filene's Basement retail locations.  Thus, to obtain injunctive relief, Plaintiffs filed suit against Defendants within seven months of Defendants purchasing the Filene's Basement stores, after Plaintiffs and other ERC members visited Defendants' stores in the hopes that Defendants had fixed the barriers that the prior owners had neglected.  Against this backdrop, and applying the proper statute of limitations law, Plaintiffs' claims are unquestionably timely.

**B.     The Statute of Limitations Has Not Begun To Run Because the Barriers in Defendants' Stores Are Continuing Violations**

Regardless of the appropriate limitations period, the statute has not even begun to run on Plaintiffs' ADA claims given that Defendants' unlawful conduct and practices are ongoing. Because the accessibility barriers at Defendants' stores constitute continuing violations, the

statute of limitations will not begin to run until the barriers are removed.  *See Holland v. Bd. of Trustees of Univ. of D.C.*, 794 F. Supp. 420, 422-23 (D.D.C. 1992) (holding that discrimination claims were not time-barred because former employee had alleged a series of related discriminatory acts, one or more of which fell within the limitations period); *Bodley v. Macayo Rests., LLC*, 546 F. Supp. 2d 696 (D. Ariz. 2008) (finding that action under ADA to remove existing barriers at a place of public accommodation was not time-barred by two-year statute of limitations even though plaintiff may have known about the barriers for longer than two years; limitations period would not expire until two years after the termination of the alleged barriers); *Pickern v. Holiday Quality Foods*, 293 F.3d at 1137 (suggesting that existing barriers at a place of public accommodation constitute an ongoing violation of the ADA and that an action to remove them is not time-barred even though the plaintiff may have known about them for a period of time longer than the statute of limitations); *Schonfeld v. City of Carlsbad*, 978 F. Supp. 1329, 1333 (S.D. Cal. 1997) (finding that disabled residents' claim against city for violations of the ADA was based on continuing violations, and thus limitations period did not expire one year after the date on which residents' rights were allegedly first violated).  Certainly with respect to Plaintiffs' claims for injunctive relief, Plaintiffs' claims cannot be deemed untimely since Defendants have not cured the ADA violations.

### C.  The Discovery Rule – Not the Date of Construction – Governs When the Statute of Limitations Begins to Run for ADA Claims

Finally, even if the existing barriers in Defendants' stores are deemed not to be continuing violations, the statute of limitations would not begin to run for each Plaintiff until the date that Plaintiff could first maintain a suit against Defendants to a successful conclusion. Defendants urge further error when they suggest that "the limitations period for ADA design and construction claims begins to run when the allegedly noncompliant building is constructed or

renovated." Mot. to Dismiss at 21 (citing *Frame v. City of Arlington*, 575 F.3d 432, 439-41 (5th Cir. 2009)). Not so. The ADA statute of limitations would begin to run from the dates each Plaintiff discovered accessibility barriers at Defendants' stores, not the dates those barriers were built, because Plaintiffs could not have filed suit before discovering barriers at those stores.

Federal law governs the question of when a federal claim accrues, regardless of whether the statute of limitations is determined with reference to a state statute. *See Connors v. Hallmark & Son Coal Co.*, 935 F.2d 336 (D.C. 1991). Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996); *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). It is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citing *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) and *Rawlings v. Ray*, 312 U.S. 96, 98 (1941)).

Courts in this District apply the discovery rule in ADA cases to determine when the statute of limitations begins to run. *See Stewart v. District of Columbia* No. 04-1444, 2006 WL 626921 at *3 (D.D.C. Mar. 12, 2006) ("[I]t is well-settled that '[t]he statute of limitations for ADA claims accrues at the time when the plaintiff "knew or had reason to know of the injury serving as the basis for his claim.'" *Bendik v. Credit Suisse First Boston (USA), Inc.*, No. 02-9554, 2004 WL 736852 at *5 (S.D.N.Y. Apr. 5, 2004) (quoting *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999).") This approach is consistent with that of other federal courts in applying the discovery rule in ADA cases. *See Burkhart v. Widener Univ., Inc.*, 70 Fed. Appx. 52, 53 (3d Cir. 2003) (citing *Toney v. U.S. Healthcare, Inc.*, 840 F.Supp. 357, 359 (E.D.Pa.

1993)), *aff'd without op.*, 37 F.3d 1489 (3d Cir. 1994) ("A cause of action accrues and the statute of limitations begins to run under Titles III and IV of the ADA when the plaintiff knows or has reason to know of the injury that is the basis for the action.").

In the present case, while the ERC and Marsha Johnson knew that the *previous owners* of Filene's Basement engaged in discriminatory practices by maintaining barriers in their stores, their claims *against Defendants* did not begin to run until the date on which they could first maintain a suit *against Defendants*.   The statutes of limitations on Plaintiffs' claims against Defendants could not have begun to run before June 2009 when Defendants bought Filene's Basement and failed to remove the accessibility barriers in their stores.   Plaintiffs did not discover that Defendants were in violation of the ADA (and the DCHRA) until *after* Defendants assumed ownership and control of the Filene's Basement stores, when, upon visiting the retail locations now being run by Defendants, Plaintiffs found that Defendants, too, were maintaining barriers and practices that discriminated against persons with disabilities.  ¶ 19-20, 25.  Plaintiffs hardly can be accused of sitting on their rights: they brought suit against Defendants in January 2010, within one year after Defendants assumed ownership of the Filene's Basement stores and four months after learning of Defendants' discriminatory conduct.   Accordingly, Plaintiffs' claims did not accrue until well within a year of filing suit, and thus are timely.  For these same reasons, Plaintiffs' DCHRA claims also are timely.

## III.   PLAINTIFFS STATE A CLAIM UNDER THE DCHRA

To defeat a 12(b)(6) motion to dismiss for failure to state a claim, Plaintiffs need only allege a plausible entitlement to relief, by setting forth any set of facts consistent with the allegations.  *City of Moundridge v. Exxon Mobil Corp.*, 250 F.R.D. 1, 4 (D.D.C. 2008).  While the alleged facts must possess enough heft to show that the pleader is entitled to relief, a complaint does not need specific facts beyond those necessary to state his claim and the grounds

showing entitlement to relief.  *Id.* at 5.  In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiffs' favor.  *Alston v. District of Columbia*, 561 F. Supp. 2d 29, 36 (D.D.C. 2008).

In discrimination cases, plaintiffs can survive a motion to dismiss based on minimal factual allegations.  *See, e.g., Rouse v. Berry*, 680 F. Supp. 2d 233, 236-37 (D.D.C. 2010) ("The D.C. Circuit has long recognized the ease with which a plaintiff claiming employment discrimination can survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  "'Because racial discrimination in employment is a claim upon which relief can be granted, . . . "I was turned down for a job because of my race" is all a complaint has to state to survive a motion to dismiss under [Rule] 12(b)(6).'" (quoting *Potts v. Howard Univ. Hosp.*, 258 Fed. Appx. 346, 347 (D.C.Cir. 2007) quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C.Cir. 2000)).  Plaintiffs more than satisfy this low threshold.

### A.     ERC Does Not Seek to Apply the ADA's Design Standards to the DCHRA

After Defendants spend pages arguing that the ADA and DCHRA are substantially analogous to merit the same statute of limitations, Defendants do an about-face in the very next section of their brief to assert that the DCHRA does not incorporate the ADA's design standards. The irony of this contradiction aside, Defendants attack the proverbial straw man.  The ERC does not seek to apply the ADA's design standards to the DCHRA.  The ERC's claim under the DCHRA is entirely distinct from its claim under the ADA.

The DCHRA clearly states:

It shall be an *unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based on* the actual or perceived: race, color, religion, national origin, sex, age, marital status, personal appearance,

> sexual orientation, gender identity or expression, familial status, family responsibilities, genetic information, *disability*, matriculation, political affiliation, source of income, or place of residence or business of any individual:
>
> (1) *To deny*, directly or indirectly, any person *the full and equal enjoyment* of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations;

D.C. Code § 2-1042.3(1)(a)(1).  Under the DCHRA, the ERC seeks for Defendants to modify *their practices* to comply with the *DCHRA's prohibition against discrimination* on the basis of disability.  ¶90 (emphasis added).  If Defendants, as a practical result of modifying their practices to comply with the DCHRA, also comply with the ADA's design requirements to remove the barriers at their stores, then all the better.  But the ERC's pleadings do not contain any allegations which would seek to graft the ADA's design standards onto the DCHRA.

Defendants' argument that the ERC seeks to apply the ADA design standards to the DCHRA lacks support in the pleadings.  The differences between the ERC's ADA and DCHRA claims are clear as demonstrated in the Complaint.  First, the sections of the Complaint that address the claims under the DCHRA and ADA are separate.  *Compare* ¶¶ 56-82 *with* ¶¶ 83-92.  Moreover, the ERC's allegations under the ADA and DCHRA are different.  The ADA allegations claim "architectural and structural barriers in violation of the ADA" at Filene's Basement stores; whereas, the DCHRA allegations do not.  ¶¶ 64-70.  In addition, the ADA allegations highlight Defendants' "failure to maintain accessible features in violation of the ADA"; whereas, the DCHRA allegations do not.  ¶¶ 71-78.  Finally, the ADA allegations clearly identify Defendants' "failure to make reasonable modifications under the ADA"; whereas the DCHRA allegations make no mention of this.  ¶¶ 79-82.

Indeed, the section of the Complaint addressing the DCHRA allegations makes no mention of the ADA at all.  Instead, and consistent with the language of the DCHRA, the ERC alleges "*practices*, *inter alia*, [that] have the effect or consequence of denying individuals with

disabilities, including Plaintiffs, the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of Defendants' stores." ¶¶ 89-90. This language mirrors the DCHRA's prohibition that "*[a]ny practice* which has the effect or consequence of violating any of the provisions of this chapter shall be deemed an unlawful discriminatory practice." ¶ 89.

The Plaintiffs have raised different allegations under the ADA and DCHRA. Defendants' claim that the Plaintiffs have attempted to do otherwise is baseless.

### B.     Plaintiffs Have Stated a Claim For Relief Under the DCHRA

Plaintiffs have made detailed factual allegations supporting their right to relief under the DCHRA. For example, Marsha Johnson alleged that she was left waiting on a wheelchair lift for ten minutes because Filene's Basement employees could not get the lift to work, ¶ 19, and that once in the store, she could not navigate through the store because the clothing aisles were placed so close together as to block access for her wheelchair, ¶ 20. For her part, Regina Lee alleged that she could not reach or even see certain merchandise because the aisles are congested with merchandise and because entire portions of the store were obstructed. ¶ 26.

Plaintiffs have further alleged that "as a result of Defendants' continuing failure to modify their policies, practices and procedures to provide exterior and interior access to Filene's Basement stores in a manner that is readily accessible to and usable by persons with disabilities as required by the . . . DCHRA, Plaintiff ERC has suffered, and will continue to suffer, injury including, but not limited to: a. diversion of the ERC's scarce resources . . . b. frustration of the ERC's mission . . . and c. interference with the ERC's interests, and those of its members." ¶ 52. Taking these factual allegations as true and drawing all reasonable inferences from them, the Court should find that Plaintiffs have alleged a plausible entitlement to relief under the DCHRA. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546 (2007); *Rouse*, 680 F. Supp. 2d at 235.

## CONCLUSION

For the reasons stated herein, the Court should deny Defendants' motion to dismiss.


Respectfully submitted,


/s/ Daniel T. Donovan
Daniel T. Donovan, D.C. Bar No. 459680
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5174
ddonovan@kirkland.com


E. Elaine Gardner, D.C. Bar No. 271262
WASHINGTON LAWYERS' COMMITTEE FOR
CIVIL RIGHTS & URBAN AFFAIRS
11 Dupont Circle, N.W.; Suite 400
Washington, D.C. 20036
Telephone: (202) 319-1000
Facsimile: (202) 319-1010
elaine_gardner@washlaw.org

June 18, 2010                    *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June, 2010, I caused a true and correct copy of

the foregoing Memorandum of Points and Authorities in Opposition to Defendants' Motion to

Dismiss to be served via the Court's electronic filing system upon the following:

Andrew A. Nicely
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
anicely@mayerbrown.com
*Counsel for Defendants*

/s/ Daniel T. Donovan
Daniel T. Donovan, D.C. Bar No. 459680
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5174
ddonovan@kirkland.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE EQUAL RIGHTS CENTER, MARSHA
JOHNSON, and REGINA LEE,

              Plaintiffs,

      v.

SYMS CORP and FILENE'S BASEMENT,
LLC F/K/A SYL, LLC,

              Defendants.

**Civil No. 1:10-cv-00161-EGS**
Assigned to:   Sullivan, Emmet G.
Assign. Date: 1/26/2010
Description:   Civil Rights- Non Employ

**[PROPOSED] ORDER**

This matter having come before the Court on Plaintiffs' Memorandum in Opposition to

Defendants' Motion to Dismiss, and good cause being shown therefore, it is hereby ORDERED

that Defendants' Motion is DENIED.

Date:  _____, 2010                _____

                                    UNITED STATES DISTRICT JUDGE