**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**THE EQUAL RIGHTS CENTER et al.,**

        **Plaintiffs,**

**v.**

**SYMS CORP. et al.,**

        **Defendants.**

---

Civil Action No. 1:10-CV-00161-EGS

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION TO DISMISS THE COMPLAINT**

Andrew A. Nicely (D.C. No. 458805)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C.  20006
(202) 263-3000
anicely@mayerbrown.com

*Counsel for defendants Syms Corp. &
Filene's Basement, LLC*

June 28, 2010

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ..................................................................................................................... 1

I.     PLAINTIFFS LACK STANDING .......................................................................... 2

       A.     ERC Lacks Standing ..................................................................................... 2

              1.     ERC Lacks Organizational Standing ................................................. 2

                     a.     ERC has not pleaded an Article III injury-in-fact......................... 2

                     b.     ERC does not meet the prudential standing requirement.............. 6

              2.     ERC Lacks Associational Standing .................................................... 7

                     a.     The individual plaintiffs do not provide ERC with standing......... 8

                     b.     ERC has not shown that any absent members have standing ....... 8

                     c.     ERC lacks standing as to stores in other regions .......................... 9

              3.     ERC Cannot Sue For Damages.......................................................... 10

       B.     The Individual Plaintiffs Have Limited Standing.................................... 10

II.    THE CLAIMS ARE TIME-BARRED ................................................................... 11

       A.     The Statute Of Limitations For Both Claims Is One Year.................... 11

       B.     The "Construction Rule" Governs The Statute Of Limitations ............. 13

       C.     Allegedly Inaccessible Buildings Are Not A "Continuing Violation." .............. 15

       D.     Plaintiffs' Claims Are Untimely ............................................................... 17

III.   THE DCHRA CLAIMS SHOULD BE DISMISSED ................................... 18

CONCLUSION................................................................................................................. 23

## TABLE OF AUTHORITIES

Page(s)

CASES

*Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*,
469 F.3d 129 (D.C. Cir. 2006) ............................................................5, 6

*Am. Petroleum Inst. v. Technomedia Int'l, Inc.*,
__ F. Supp. 2d __, 2010 WL 1233496 (D.D.C. Mar. 30, 2010) ........................................ 19-20

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*,
297 F. Supp. 2d 165 (D.D.C. 2003) ............................................................19

*Ass'n for Disabled Ams., Inc. v. Concorde Gaming Corp.*,
158 F. Supp. 2d 1353 (S.D. Fla. 2001) ............................................................21

*Ass'n for Disabled Americans, Inc. v. Claypool Holdings LLC*,
2001 WL 1112109 (S.D. Ind. Aug. 6, 2001) ............................................................7

*Bodley v. Macayo Rests., LLC*,
546 F. Supp. 2d 696 (D. Ariz. 2008) ............................................................17

*Boening v. C.I.A.*,
579 F. Supp. 2d 166 (D.D.C. 2008) ............................................................19

*Bressler v. Wiegle*,
2008 WL 886124 (N.D. Ohio Mar. 28, 2008) ............................................................15

*Broom v. Strickland*,
579 F.3d 553 (6th Cir. 2009) ............................................................16

*Burkhart v. Widener Univ., Inc.*,
70 F. App'x 52 (3d Cir. 2003) ............................................................15

*Catholic Soc. Serv. v. Shalala*,
12 F.3d 1123 (D.C. Cir. 1994) ............................................................7

*Clark v. Burger King Corp.*,
255 F. Supp. 2d 334 (D.N.J. 2003) ............................................................9, 10, 11

*State ex rel. Claypool v. Evans*,
757 N.W.2d 166 (Iowa 2008) ............................................................14

*Di Lella v. Univ. of Dist. of Columbia David A. Clarke Sch. of Law*,
570 F. Supp. 2d 1 (D.D.C. 2008) ............................................................12

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*Equal Rights Ctr. v. Post Props., Inc.*,
  657 F. Supp. 2d 197 (D.D.C. 2009) ............................................................................3, 4, 5, 6

*Equal Rights Ctr. v. AvalonBay Cmtys., Inc.*,
  2009 WL 1153397 (D. Md. Mar. 23, 2009) ........................................................................4, 5

*Equal Rights Ctr. v. Equity Residential*,
  483 F. Supp. 2d 482 (D. Md. 2007) ........................................................................................4

*Equal Rights Ctr. v. Hilton Hotels Corp.*,
  2009 WL 6067336 (D.D.C. Mar. 25, 2009) ................................................................ *passim*

*Fair Employment Council v. BMC Mktg. Corp.*,
  28 F.3d 1268 (D.C. Cir. 1994) ........................................................................................3, 4, 5

*Fla. Pub. Telecomms. Ass'n v. FCC*,
  54 F.3d 857 (D.C. Cir. 1995) ................................................................................................7

*Frame v. City of Arlington*,
  575 F.3d 432 (5th Cir. 2009) ................................................................................13, 14, 15

*Garcia v. Brockway*,
  526 F.3d 456 (9th Cir. 2008) (en banc),
  *cert. denied*, 129 S. Ct. 724 (2008) ..........................................................13, 14, 15, 17

*Goldstein v. Costco Wholesale Corp.*,
  278 F. Supp. 2d 766 (E.D. Va. 2003) ....................................................................................5

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................................................................5

*Holland v. Bd. of Trustees of Univ. of the Dist. of Columbia*,
  794 F. Supp. 420 (D.D.C. 1992) ..........................................................................................16

*Indep. Living Res. v. Oregon Arena Corp.*,
  982 F. Supp. 698 (D. Or. 1997) ............................................................................................7

*Jimenez v. Quarterman*,
  129 S. Ct. 681 (2009) ............................................................................................................6

*Kimes v. Stone*,
  84 F.3d 1121 (9th Cir. 1996) ..............................................................................................14

*Kolender v. Lawson*,
  461 U.S. 352 (1983) ............................................................................................................23

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

*Long v. Howard Univ.*,
   512 F. Supp. 2d 1 (D.D.C. 2007) ..........................................................................12

*Mayers v. Laborers' Health & Safety Fund*,
   478 F.3d 364 (D.C. Cir. 2007) ...............................................................................16

*Moseke v. Miller & Smith, Inc.*,
   202 F. Supp. 2d 492 (E.D. Va. 2002) ....................................................................14

*State ex rel. N.D. Dep't of Labor v. Matrix Props. Corp.*,
   770 N.W.2d 290 (N.D. 2009) .................................................................................14

*Nat'l Adver. Co. v. City of Raleigh*,
   947 F.2d 1158 (4th Cir. 1991) ...............................................................................16

*Nat'l Consumers League v. Gen. Mills, Inc.*,
   680 F. Supp. 2d 132 (D.D.C. 2010) .........................................................................4

*Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*,
   414 U.S. 453 (1974)...........................................................................................22-23

*Pickern v. Holiday Quality Foods Inc.*,
   293 F.3d 1133 (9th Cir. 2002) ...............................................................................17

*Poole v. Terminix Co.*,
   200 F.2d 746 (D.C. Cir. 1953) ...............................................................................13

*Ruff v. Runyon*,
   258 F.3d 498 (6th Cir. 2001) .................................................................................15

*Schonfeld v. City of Carlsbad*,
   978 F. Supp. 1329 (S.D. Cal. 1997).......................................................................17

*Stewart v. Dist. of Columbia*,
   2006 WL 626921 (D.D.C. Mar. 12, 2006).............................................................14

*Taxi Connection v. Dakota, Minn. & E. R.R.*,
   513 F.3d 823 (8th Cir. 2008) .................................................................................16

*Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*,
   482 F.3d 1330 (Fed. Cir. 2007)..............................................................................11

*TwoRivers v. Lewis*,
   174 F.3d 987 (9th Cir. 1999) .................................................................................14

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*United Food & Commercial Workers Union v. Brown Group, Inc.*,
  517 U.S. 544 (1996) ..................................................................................................8

*United States v. Taigen & Sons, Inc.*,
  303 F. Supp. 2d 1129 (D. Idaho 2003) ...................................................................14

*W. Va. Univ. Hosps., Inc. v. Casey*,
  499 U.S. 83 (1991) ....................................................................................................6

*Wallace v. Kato*,
  549 U.S. 384 (2007) .................................................................................................15

*Ward v. Caulk*,
  650 F.2d 1144 (9th Cir. 1981) ...........................................................................15, 16

*Warth v. Seldin*,
  422 U.S. 490 (1975) ...................................................................................................7

*Williams v. Savage*,
  538 F. Supp. 2d 34 (D.D.C. 2008) ..........................................................................12

*Wilson v. Garcia*,
  471 U.S. 261 (1985) ............................................................................................12, 13

## STATUTES, RULES AND REGULATION

42 U.S.C. § 3604 ..............................................................................................................22

42 U.S.C. § 3613 ...........................................................................................................6, 7

42 U.S.C. § 12188 .........................................................................................................6, 11

42 U.S.C. § 12133 ..............................................................................................................7

28 C.F.R. Pt. 36, App. A ..................................................................................................21

D.C. Code § 2-1402.21 .....................................................................................................22

Fed. R. Civ. P. 12(b)(1) ....................................................................................................23

Fed. R. Civ. P. 12(b)(6) ....................................................................................................23

**ARGUMENT**

The complaint suffers from a number of irremediable flaws, each of which provides an independent basis for dismissal.  In several instances, courts have rejected precisely the arguments that plaintiffs make here, often in cases that ERC itself has litigated.  For example, several of ERC's arguments on standing already have been rejected by the D.C. Circuit, and ERC has not identified any intervening change in the law or any change in its allegations that would warrant a different outcome in this case.  Syms acknowledged in its opening brief that the two individual plaintiffs have alleged facts that, if substantiated, would be sufficient to establish standing as to Filene's Basement stores they visited.  Settled precedent, however, forecloses them from pursuing claims related to stores they have never visited.

The claims of all three plaintiffs should be dismissed based on the statute of limitations. Although Syms acknowledges that some courts in this District have evaluated the timeliness of ADA design claims using the District of Columbia's three-year limitations period for personal injury claims, the Fourth Circuit is correct in holding that a state-antidiscrimination law is the proper limitations period to "borrow" for ADA purposes.  The DCHRA's one-year limitations period thus applies to all claims in this suit.  But even applying a three-year limitation period, plaintiffs' claims are not timely.  As the Fifth Circuit has held in the context of the ADA and the Ninth Circuit held with respect to the Fair Housing Act, the statute of limitations for claims alleging a violation of an affirmative design and construction standard begin to run at the time construction is complete.  Because the features at issue here were constructed several years ago, the statute of limitations has long since lapsed.  Plaintiffs contend that their claims are timely under the discovery rule and the continuing violation doctrine, but neither of those applies here.

Finally, plaintiffs readily concede that the DCHRA does not expressly or implicitly incorporate the ADA's design and construction standards for public accommodations.  That

concession is fatal, because the theory staked out in the amended complaint is that Syms violated the DCHRA by failing to maintain the Filene's Basement stores in compliance with the ADA's accessibility standards.  Plaintiffs attempt to rewrite the relevant paragraphs of the complaint in their opposition brief, but that will not do.  The DCHRA claim must be dismissed with prejudice as to all three plaintiffs because it is undisputed that the statute does not establish design and construction requirements for public accommodations.

## I.  PLAINTIFFS LACK STANDING.

ERC's claims must be dismissed because it is unable to articulate a theory of organizational or associational standing that is not foreclosed by settled precedent.  The individual plaintiffs, Johnson and Lee, have failed to demonstrate that they have standing with respect to Filene's Basement stores that they have never visited.  Accordingly, their claims are limited to the particular stores where they allegedly encountered accessibility barriers.

### A.  ERC Lacks Standing.

#### 1.  ERC Lacks Organizational Standing.

ERC lacks standing to sue in its own right because it cannot point to an injury-in-fact that is cognizable under Article III, and because it cannot satisfy the prudential standing requirements imposed by the ADA, as the D.C. Circuit and courts in this District have recognized.

##### a.  ERC has not pleaded an Article III injury-in-fact.

To establish organizational standing, ERC was required to plead that the entity itself somehow was injured by the alleged design and construction errors at defendants' stores.  In its amended complaint, ERC attempted to satisfy that burden by alleging that "it has diverted resources to identify and counteract Defendants' unlawful practices," "its mission has been frustrated by Defendants' unlawful practices," and "Defendants have interfered with the ERC's

interests and those of the ERC's members." Opp. at 9. But these are exactly the allegations that ERC has made in prior cases and that courts have squarely rejected as facially insufficient.

In its opening brief, Syms discussed at some length the D.C. Circuit's decision in *Fair Employment Council v. BMC Marketing Corp.*, 28 F.3d 1268 (D.C. Cir. 1994). *See* Mot. to Dismiss at 9. The case is of some significance because it was brought by ERC's predecessor entity, and the organizational standing theory, as in this case, rested on allegations that the plaintiff had been forced to divert its resources to combat the defendant's allegedly discriminatory practices. The D.C. Circuit gave short shift to ERC's theory, remarking that "this particular harm is self-inflicted; it results not from any actions taken by [defendant] BMC, but rather from the Council's own budgetary choices." *BMC Mktg.*, 28 F.3d at 1276-77. ERC offers no reason why the same theory should be credited here. In fact, there is no mention of this controlling decision in ERC's opposition.

ERC already has enjoyed a second bite at this apple. In *Equal Rights Center v. Post Properties, Inc.*, 657 F. Supp. 2d 197 (D.D.C. 2009), ERC once again alleged that its mission had been "frustrated" and its resources "diverted" by the defendant's allegedly discriminatory practices. And the court, once again, held that those purported injuries were manifestly insufficient because "ERC *chose* to redirect its resources to investigate Post's allegedly discriminatory practices[,] ERC has thus not suffered an injury to date, traceable to Post's conduct within the meaning of Article III." *Id.* at 201.

ERC attempts to distinguish *Post* by suggesting that it involved a "'willful' diversion of funds towards investigating and prosecuting the claims," whereas this case involves both a willful diversion of resources and a compulsory one because "ERC has had to provide education, counseling and other outreach services to its members and the community." Opp. at 10 (citing

Am. Compl. ¶ 12).   But ERC's complaint in the *Post* case refutes that supposed distinction. There, as in its complaint here, ERC alleged that the defendant's "continuing discriminatory practices also have ***forced*** the ERC to divert significant and scarce resources to identify, investigate, and counteract POST's discriminatory practices."   Compl. ¶ 44, *Post*, 657 F. Supp. 2d 197 (No. 06-cv-1991) (emphasis added); *see id.* ¶ 46(b).   The court in *Post* nonetheless held that ERC had failed to establish an Article III injury.   *See* 657 F. Supp. 2d at 201.   There is no basis for a different conclusion here.

The decisions in *Fair Employment Council* and *Post* apply the commonsense principle that an advocacy organization cannot be "injured" for Article III purposes if its alleged injuries consist of providing the very services that the organization exists to provide, and would provide regardless of the activity of the defendant.   ERC says that its mission is to provide "research, outreach and education, counseling, advocacy and enforcement."   Am. Compl. ¶ 12.   Thus, the design of the Filene's Basement stores did not force ERC to "provide education, counseling and other outreach services."   Opp. at 10.   Those are things that ERC says it does in the normal course of business.   *See Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 136 (D.D.C. 2010) ("Challenging conduct like General Mills' alleged mislabeling is the very purpose of consumer advocacy organizations.   As such, General Mills' alleged conduct does not hamper NCL's advocacy effort; if anything it gives NCL an opportunity to carry out its mission.").

Faced with the weight of this adverse authority, ERC cites a number of cases from various jurisdictions in which the plaintiff was found to have organizational standing, including two district court decisions from Maryland in which ERC itself was found to have standing based on its frustration of mission and diversion of resources claims.   *See* Opp. at 10-11; *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 487 (D. Md. 2007); *Equal Rights Ctr. v.*

*AvalonBay Cmtys., Inc.*, 2009 WL 1153397, at *5-6 (D. Md. Mar. 23, 2009).  The Maryland decisions are inapposite because those courts declined to follow the D.C. Circuit's decision in *BMC Marketing*.  *See AvalonBay*, 2009 WL 1153397, at *5-6.  *BMC Marketing* is binding precedent here.

ERC's other cases involve different organizations with different missions and different claims of injury.  For instance, ERC argues that the Supreme Court recognized frustration-of-mission as a viable Article III injury in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).  *See* Opp. at 10.  But as the district court recognized in *Goldstein v. Costco Wholesale Corp.*, ERC, then known as the Disability Rights Council of Greater Washington ("DRC"), "is in the business of litigating alleged disability discrimination as evidenced by the fact that a minimum of 80% of its revenue is obtained from litigation settlements or verdicts."  278 F. Supp. 2d 766, 771 (E.D. Va. 2003).  That activity, the court noted, "stands in stark contrast to that of the non-profit organization in *Havens*[,] * * * [which] focused on operating a housing counseling service, investigating complaints about housing discrimination, and then referring those complaints to others for further pursuit."  *Id.*  Thus, DRC could not rely on *Havens* because "[w]hen an organization's primary source of revenue is litigation directed against alleged discrimination, it cannot be said that the organization's participation in such litigation impairs its ability to do its work."  *Id.*

Nor can plaintiffs derive support from *Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129 (D.C. Cir. 2006), a case predating *Post Properties*.  There, the Court found that the programmatic costs were "***directly attributable*** to [the] FDA policies" at issue in the case; that is, but for the defendant's specific conduct, the organization would have had no costs whatsoever.  *Id*. at 133 (emphasis added).  But here, there

is no contention that ERC's general programmatic costs are ***directly attributable*** to Sym's alleged conduct; ERC has spent resources on its general programs for years, if not decades, and it will continue to do so long after this suit concludes.  Thus, after citing *Abigail Alliance*, the court in *Post Properties* rightly rejected ERC's theory.

<b>b.</b>  <b>ERC does not meet the prudential standing requirement.</b>

Syms demonstrated in its opening brief that ERC cannot proceed on an organizational standing theory for the independent reason that it cannot satisfy the ADA's prudential standing requirement.  Specifically, ERC cannot claim to be a "person who is being subjected to discrimination on the basis of disability."  42 U.S.C. § 12188(a)(1).  Ignoring the plain language of the statute, ERC argues that the prudential requirement is inconsistent with "the legislative history and purpose of the ADA."  Opp. at 12.  That contention runs afoul of the cardinal rule of statutory interpretation that "[t]he best evidence of [Congress'] purpose is the statutory text" itself.  *W. Va. Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 98 (1991).  That is, "when the statutory language is plain, [a court] must enforce it according to its terms." *Jimenez v. Quarterman*, 129 S. Ct. 681, 685 (2009).  Because the language of Section 12188(a)(1) is plain, courts across the country, including another court in this District, have found that only a natural person has prudential standing to pursue claims under Title III of the ADA.  *See* Mot. to Dismiss at 11-12; *see also Equal Rights Ctr. v. Hilton Hotels Corp.*, 2009 WL 6067336, at *4 (D.D.C. Mar. 25, 2009).

ERC urges the Court to harmonize the ADA's provisions with those of the Fair Housing Act ("FHA"), which does not impose a prudential standing requirement.  *See* Opp. at 12.  ERC made the same argument in *Hilton Hotels* and Judge Robertson rejected it, explaining that "the language of Title III of the ADA is narrower than both Title II [of the ADA] and the FHA." 2009 WL 6067336, at *4.  The FHA provides a cause of action to any "aggrieved person" (42

U.S.C. § 3613(a)), and Title II provides a remedy to "any person alleging discrimination on the basis of disability" (*id*. § 12133).  By contrast, Title III, the provision that ERC invokes here, "expressly limits its scope to those who have, or will be, subject to discrimination—a requirement not found in either Title II or the FHA." *Hilton Hotels*, 2009 WL 6067336, at *4. The incongruity between Title III and Title II may be "peculiar," but a court must "presume that when 'Congress uses different language in different sections of a statute, it does so intentionally.'" *Id.* at *5 (quoting *Fla. Pub. Telecomms. Ass'n v. FCC,* 54 F.3d 857, 860 (D.C. Cir. 1995)).  Accordingly, as a matter of law, ERC cannot satisfy the prudential requirements for organizational standing.[1]

### 2.    ERC Lacks Associational Standing.

ERC also is unable to establish associational standing.  As a threshold matter, ERC does not dispute that a "'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Catholic Soc. Serv. v. Shalala*, 12 F.3d 1123, 1126 (D.C. Cir. 1994) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  Because of this fundamental principle, ERC cannot establish standing on the basis of injuries allegedly suffered by the two named plaintiffs.  Rather, it must identify in the complaint any absent members that it claims to represent.  ERC's complaint does not meet that requirement, and even if it did, ERC would not have derivative standing to complain about Filene's Basement stores other than those defined in the complaint as the "D.C. Metro Stores."

---

[1]    ERC cites *Association for Disabled Americans, Inc. v. Claypool Holdings LLC*, 2001 WL 1112109, at *1 (S.D. Ind. Aug. 6, 2001), and *Independent Living Resources v. Oregon Arena Corp.*, 982 F. Supp. 698 (D. Or. 1997), as examples of decisions that came out the other way, but neither of those courts considered, much less decided, whether advocacy groups can establish organizational standing under Title III of the ADA.

a.     **The individual plaintiffs do not provide ERC with standing.**

ERC argues that, under the Supreme Court's decision in *Hunt*, associational standing is not limited to the representation of absent members of the organization.  *See* Opp. at 8.  But the Supreme Court itself, in the context of discussing the *Hunt* test, has explained that the purpose of associational standing is to provide certain organizations the ability, in limited circumstances, to "assert the rights of *absent* third parties."  *United Food & Commercial Workers Union v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996) (emphasis added).  This is an exception to the general rule that a party cannot assert the claims of another.  *Id.*  As a number of district courts have aptly concluded, it makes no sense to have individual members appear as plaintiffs to prosecute their claims, while at the same time allowing an advocacy organization to pursue the same claims on their behalf in an associational capacity.  *See* Mot. to Dismiss at 13-14.  Thus, ERC lacks standing to redress any grievances that plaintiffs Johnson and Lee claim to have against Syms.

According to ERC, "Judge Robertson found that the ERC satisfied the first factor of the *Hunt* test based on a single named plaintiff in that suit."  Opp. at 8.  But the court made no such finding.  Rather, "[t]he parties [did] not dispute that the ERC * * * ha[d] associational standing to represent these individual[] claims," *Hilton Hotels*, 2009 WL 6067336, at *5, and thus, it was unnecessary for the court to decide the question.

b.     **ERC has not shown that any absent members have standing.**

Syms explained in its opening brief that ERC cannot represent the interests of absent members whose identities and alleged injuries are not set out in the complaint.  On this issue, ERC embraces *Hilton Hotels* as an exemplar of the "relevant case law."  Opp. at 9.  But in *Hilton Hotels*, the court found that ERC lacked standing to represent unnamed members for precisely the reasons Syms has explained.  There, the court held that, to establish "standing to sue on behalf [its] unnamed members, * * * ***at a minimum***, the ERC * * * must state: (1) who these

-8-

members are; (2) which Hilton hotel(s) they visited; (3) what accessibility barriers they encountered; and (4) whether they would return to that hotel or those hotels were it not for the accessibility barriers." *Hilton Hotels*, 2009 WL 6067336, at *5 (emphasis added).

ERC's complaint in this case does not plead ***any*** of the necessary details, as to any of the organization's members.  Instead, the complaint relies on a conclusory allegation that

> As a result of Defendants' [allegedly inaccessible stores], ERC's members with disabilities—including Marsha Johnson and Regina Lee—have suffered, and will continue to suffer, injury including, but not limited to, a deprivation of their right to full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Filene's Basement stores, as well as humiliation, embarrassment and emotional distress from the indignity and stigma of discrimination.

Am. Compl. ¶ 12.  ERC plainly is mistaken when it asserts that "[t]he relevant case law requires no more" than this.  Opp. at 9.  ERC provided far more detailed allegations in *Hilton Hotels* than in this case (*see* 1st Am. Compl. ¶ 44, *Hilton Hotels Corp.*, 2009 WL 6067336 (No. 07-1528)), but Judge Robertson found even ERC's more particularized allegations insufficient.  The court held that ERC's "allegations [were] simply too vague to establish that these members would have standing to sue in their own right," and therefore, ERC could not rely on them to establish associational standing.  *Hilton Hotels*, 2009 WL 6067336, at *5.  If ERC's more detailed allegations in *Hilton Hotels* were inadequate, the allegations regarding absent members in this case miss the mark by a substantially wider margin.

### c.     ERC lacks standing as to stores in other regions.

At minimum, ERC lacks associational standing to pursue claims involving stores located outside the D.C. metro area.  Even if ERC could parrot the claims of Johnson and Lee, it has not alleged any facts that, if proven, would provide it with standing to complain about the design and construction of Filene's Basement stores in Massachusetts, New York, Pennsylvania, and other distant locations.  *See Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 343 (D.N.J. 2003).

Indeed, the complaint alleges only that Johnson and Lee would shop at stores located within 15 miles of their homes.   *See* Am. Compl. ¶¶ 22, 28.   Therefore, ERC cannot extend its associational standing beyond that 15 mile radius.

### 3.   ERC Cannot Sue For Damages.

Finally, ERC lacks standing to sue for damages.   Syms demonstrated in its opening brief that, even if ERC were found to have associational standing, it could not recover damages based on injuries allegedly suffered by its members.   *See* Mot. to Dismiss at 13-14.   ERC tacitly concedes this point.   *See* Opp. at 13.   Accordingly, ERC can seek damages if, and only if, it can establish that it has organizational standing.   For the reasons discussed above, ERC, suing as an organization, cannot show an injury-in-fact and thus lacks organizational standing under Article III principles.

### B.   <u>The Individual Plaintiffs Have Limited Standing.</u>

Syms acknowledged in its motion to dismiss that Johnson and Lee have alleged facts that, if proven, may provide them with standing to assert claims as to the particular Filene's Basement stores that each visited.   *See* Mot. to Dismiss at 16-17.   However, their standing does not extend to stores that they do not claim to have visited.   That is so for two reasons; they cannot show that they suffered actual injury at stores they have not been to, nor can they demonstrate a likelihood that they will be injured at those stores in the future.

An individual has standing to sue a facility "visited prior to filing the underlying action." *Clark,* 255 F. Supp. 2d at 342.   But "a plaintiff who discovers an accessibility barrier at one location is not necessarily deterred from visiting all other related locations, absent allegations that all the locations are identical, or at least similar."   *Hilton Hotels*, 2009 WL 6067336, at *5. Here, there is no allegation—nor could there be—that the Filene's Basement stores "possess commonality of architecture."   *Clark*, 255 F. Supp. 2d at 343 n.11.   Plaintiffs argue that the

ADA's futility doctrine makes it unnecessary for Johnson and Lee to determine whether they would have difficulty shopping at other Filene's Basement stores before asserting claims with respect to stores they have not visited.  *See* Opp. at 5-6 (citing 42 U.S.C. § 12188(a)(1)).  But the standing requirement is rooted in Article III, and it is well settled that a statute cannot extend standing beyond its constitutional limits.  *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) ("Congress * * * cannot expand standing beyond the Article III jurisdiction of federal courts.").

Furthermore, Johnson and Lee do not face a likelihood of being injured at Filene's Basement stores that they never chose to visit.  Indeed, a plaintiff necessarily "fails to demonstrate an intent to return to, or a likelihood of future injury at, locations he has yet to visit, and thus, does not satisfy the injury in fact requirement to establish standing with respect to these restaurants."  *Clark*, 255 F. Supp. 2d at 343.  Thus, the standing of Johnson and Lee, if they can later substantiate their allegations, is limited to the stores that they visited prior to filing suit.

## II.  <u>THE CLAIMS ARE TIME-BARRED.</u>

Syms explained in its opening brief that plaintiffs' claims are untimely because the Filene's Basement stores were designed and built many years ago, well outside the one-year limitations period that Syms contends should apply, and also beyond the three-year period that plaintiffs argue should apply to their ADA claims.  Plaintiffs advance two alternative positions in response—that the limitations period begins to run upon their discovery of the alleged violations or that the "continuing violation" doctrine applies—but both contentions are without merit.

### A.    <u>The Statute Of Limitations For Both Claims Is One Year.</u>

It is undisputed that the DCHRA has a one-year limitations period for claims involving public accommodations, and that because the ADA does not establish a limitations period for Title III claims, courts are required to "borrow" the most analogous time limit under state law.

Syms explained in its opening brief that, although some courts in this District have borrowed the three-year statute of limitations for personal injury claims, the DCHRA is more analogous to the ADA than is a common law personal injury claim, and therefore the DCHRA's one-year period should be applied.  *See* Mot. to Dismiss at 18-21.  Plaintiffs do not respond to that argument, other than to point out, as did Syms, that some courts have disagreed.

Two of the three cases that plaintiffs cite apply the personal injury limitations period without analyzing whether a personal injury claim is a better analogy to the ADA than is the DCHRA.  Instead, they simply point to precedent.  *See Di Lella v. Univ. of Dist. of Columbia David A. Clarke Sch. of Law*, 570 F. Supp. 2d 1, 7 n.9 (D.D.C. 2008); *Williams v. Savage*, 538 F. Supp. 2d 34, 39-40 (D.D.C. 2008).  The genesis of this approach appears to be *Long v. Howard University*, where the court observed that "[w]here a plaintiff alleges a violation in a non-employment case, a state's personal injury statute of limitations has generally been applied." 512 F. Supp. 2d 1, 11-12 (D.D.C. 2007).  The parties' briefs in that case did not debate whether the DCHRA supplied the most appropriate limitations period (*see* Def.'s Mot. for J. as a Matter of Law, *Long*, 512 F. Supp. 2d 1 (No. 02-1374), and the court did not discuss that possibility in its opinion.  Thus, plaintiffs can hardly suggest that *Di Lella*, *Williams*, or *Long* provide a principled basis to reject application of the DCHRA's one-year statute of limitations to ADA Title III claims.

Instead, there is substantial reason to conclude—as did the Fourth Circuit—that a state statute that prohibits disability discrimination is the most "analogous cause of action under state law." *Wilson v. Garcia*, 471 U.S. 261, 271 (1985).  There can be no doubt that the DCHRA is a substantially better analog for the ADA than is a personal injury action.  After all, ERC does not suggest that it is common practice for plaintiffs to bring personal injury claims in tandem with

ADA claims.  But it is a common litigation strategy for ERC to bring DCHRA and ADA claims together, as it did in this case.  That practice speaks much louder than words.  Because the courts that have applied the District of Columbia's personal injury limitations period have done so without considering the applicability of the DCHRA period, and because plaintiffs do not contend that a personal injury claim is in fact the closer analog to an ADA claim, the Court should apply a one-year limitations period to plaintiffs' ADA claims.

### B.  The "Construction Rule" Governs The Statute Of Limitations.

As Syms explained in its opening brief, under the construction rule, the limitations period on an ADA accessibility claim begins to run at the time the allegedly noncompliant condition is constructed.  *See* Mot. to Dismiss at 21-23.  ERC's reliance on the discovery rule and the continuing violation doctrine are unavailing.

The D.C. Circuit has long held that the purpose of a statute of limitations is to "bring repose and to bar efforts to enforce stale claims as to which evidence might be lost or destroyed."  *Poole v. Terminix Co.*, 200 F.2d 746, 747 (D.C. Cir. 1953).  In the context of the ADA accessibility standards, only the construction rule can provide repose.  As the Fifth Circuit recently explained, any other approach, including the discovery rule proposed by plaintiffs, would "be an evisceration of the statute of limitations defense in like ADA cases and [would result in] unlimited exposure to liability."  *Frame v. City of Arlington*, 575 F.3d 432, 440 (5th Cir. 2009).  An alleged design flaw could always be "discovered" by a new person, meaning that there would be no limitation period whatsoever.  Thus, as the Fifth Circuit concluded, the construction rule must be applied to ADA accessibility claims.  Plaintiffs offer no response to *Frame's* analysis.

*Frame* is not an outlier.  The Ninth Circuit has applied the same construction rule to design and construction claims under the FHA.  *See Garcia v. Brockway*, 526 F.3d 456 (9th Cir.

2008) (en banc), *cert. denied*, 129 S. Ct. 724 (2008).  There, the en banc court explained that the alleged statutory violation—"a failure to design and construct" in compliance with the FHA—"is not an indefinitely continuing practice, but a discrete instance of discrimination that terminates at the conclusion of the design-and-construction phase."  526 F.3d at 460-61.  Presaging *Frame*'s analysis, the Ninth Circuit observed that without the discovery rule, "the FHA's statute of limitations would provide little finality for developers, who would be required to repurchase and modify (or destroy) buildings containing inaccessible features in order to avoid design-and-construction liability for every aggrieved person who solicits tenancy from subsequent owners and managers."  *Id.* at 463.

Other courts have followed *Garcia*'s adoption of the construction rule.  *See, e.g., State ex rel. N.D. Dep't of Labor v. Matrix Props. Corp.*, 770 N.W.2d 290, 296 (N.D. 2009) ("The reasoning in *Garcia* is persuasive and we follow it."); *State ex rel. Claypool v. Evans*, 757 N.W.2d 166, 170-71 (Iowa 2008).  And prior to *Garcia*, other courts had independently concluded that the "construction rule" is appropriate in the context of FHA design and construction claims.  *See, e.g, United States v. Taigen & Sons, Inc.*, 303 F. Supp. 2d 1129, 1140-43 (D. Idaho 2003); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 2d 492, 507-08 (E.D. Va. 2002).  The bottom line is that any statute of limitations is toothless if the period does not begin to run when the allegedly inaccessible feature or condition is constructed.

In their opposition, plaintiffs do not argue that the concerns underlying the construction rule are unfounded.  They provide no reason to suggest *Frame* is incorrect.  Instead, they merely point out that some courts have applied a discovery rule to an assortment of claims that have nothing in common with this lawsuit: a medical malpractice claim (*TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999)), a conspiracy claim (*Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir.

1996)), an ADA employment discrimination claim (*Stewart v. Dist. of Columbia*, 2006 WL 626921 (D.D.C. Mar. 12, 2006)), and a non-construction ADA discrimination claim, *see Burkhart v. Widener Univ., Inc.*, 70 F. App'x 52, 53 (3d Cir. 2003) (explaining that, "[i]n a discrimination case, the focus is on when the discriminatory act occurs, not when the consequences of that act become painful").  *See* Opp. at 18.[2]

Tellingly, plaintiffs were unable to cite a single case applying the discovery rule to an ADA claim involving the design or construction of an allegedly inaccessible building.  Given that "[t]he United States Supreme Court has declined to adopt a general federal discovery rule, and has limited its own use of the discovery rule to cases alleging fraud or medical malpractice," *Frame*, 575 F.3d at 439-40 (citations omitted), that rule should not be applied here.  Instead, plaintiffs' claims should be dismissed as untimely under the construction rule that other courts consistently have applied in accessible design cases like this one.

### C.    Allegedly Inaccessible Buildings Are Not A "Continuing Violation."

Plaintiffs' "continuing violation" theory is unavailing.  In contrast to an employment discrimination claim—where discriminatory *acts* (such as harassing remarks or inappropriate touching) may continue in succession—the grievance in this case involves the *effects* of acts that occurred long ago.  The *acts* at issue here are the design and construction of the Filene's Basement stores identified in the complaint.  As the Ninth Circuit aptly explained in the context of the FHA's design and construction requirements, "'a continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation.'"  *Garcia*, 526 F.3d at 462 (alteration omitted) (quoting *Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir. 1981)).  "Although the ill effects of a failure to properly design and construct may continue to be felt

---

[2]     Plaintiffs also cite to *Ruff v. Runyon*, 258 F.3d 498 (6th Cir. 2001), but that decision was abrogated by *Wallace v. Kato*, 549 U.S. 384 (2007).  *See Bressler v. Wiegle*, 2008 WL 886124, at *9 (N.D. Ohio Mar. 28, 2008).

decades after construction is complete, failing to design and construct is a single instance of unlawful conduct." *Id.* at 463.   Thus, the en banc court of appeals held that the continuing violation doctrine does not apply, and that the statute of limitations runs from the time the relevant conduct—the design and construction of the building—is completed.  *See id.* at 460-63.

*Garcia* applies the well-established rule that the continuing effects of a past unlawful act do not, as a matter of law, amount to a continuing violation of the law.  *See*, *e.g., Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) ("A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation.") (internal quotation omitted); *Taxi Connection v. Dakota, Minn. & E. R.R.*, 513 F.3d 823, 825  (8th Cir. 2008) ("The court must distinguish between discriminatory acts and discriminatory effects; the proper focus is upon the time of the *discriminatory acts,* not upon the time at which the *consequences* of the acts became most painful." (internal quotations omitted)); *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991) (citing *Ward*).  As the D.C. Circuit has explained, a "continuing violation" theory requires a plaintiff to prove that "at least one act contributing to the claim occurred within the filing period."  *Mayers v. Laborers' Health & Safety Fund*, 478 F.3d 364, 368 (D.C. Cir. 2007) (per curiam) (alterations and internal quotation omitted).  In the context of a design and construction claim, the acts that form the basis of a claim are complete when the construction is complete.   Thus, the limitations period runs when the allegedly inaccessible building is fully constructed.

None of the cases that plaintiffs cite supports a contrary rule.  For example, *Holland v. Board of Trustees of University of the District of Columbia,* 794 F. Supp. 420 (D.D.C. 1992), a case upon which plaintiffs principally rely, was an employment discrimination suit in which the plaintiff alleged "a series of related discriminatory acts, one or more of which falls within the

limitations period." *Id*. at 422-23 (internal quotations and alteration omitted).   In the present case, plaintiffs have not pointed to a comparable "series of related discriminatory acts" that fall within the limitations period.

Plaintiffs also cite a 2002 decision from the Ninth Circuit and two lower court decisions within that circuit, all of which predate the seminal en banc opinion in *Garcia*.  *See Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002); *Bodley v. Macayo Rests., LLC*, 546 F. Supp. 2d 696, 700 (D. Ariz. 2008) (acknowledging that the defendant "cite[d] [the panel opinion of] *Garcia v. Brockway,* 503 F.3d 1092 (9th Cir. 2007), but declining to apply it because the Ninth Circuit had taken the case en banc, and thus the panel opinion no longer was binding); *Schonfeld v. City of Carlsbad*, 978 F. Supp. 1329, 1333 (S.D. Cal. 1997).  Needless to say, these decisions, to the extent they conflict with the en banc decision in *Garcia*, no longer are good law, and cannot support the use of the continuing violation doctrine in design and construction cases.

In sum, a "continuing violation" requires more than mere "continuing harm;" it requires that allegedly discriminatory ***acts*** continue into the limitations period.  The continuing violation doctrine applies in some employment discrimination cases, particularly where an employee is subjected to recurring acts of sexual harassment.  But the doctrine does not apply to affirmative design and construction claims, where the sole acts at issue—the design and construction— occurred long in the past.  Thus, plaintiffs cannot rely on the doctrine here.

### D.      Plaintiffs' Claims Are Untimely.

Plaintiffs' claims are barred by the statute of limitations because they come long after the allegedly inaccessible Filene's Basement stores were designed and built.  It is undisputed that the Connecticut Avenue store has been in existence since at least 2005, because that is the year that an ERC member went there and allegedly discovered the structural and other barriers about which plaintiffs now complain.  *See* Mot. to Dismiss at 22.  Similarly, it is undisputed that the

Wisconsin Avenue store has been in existence since at least 2008, because that is when plaintiff Johnson alleges that she went there and noted the architectural barriers alleged in the complaint. *See id.* Thus, it is manifest that the two Filene's Basement stores about which Johnson and Lee complain were designed and constructed—allegedly with an assortment of accessibility barriers—well over a year before this suit was filed. The statute of limitations has thus lapsed as to these acts.[3] Notably, plaintiffs tacitly concede by their silence that, if the construction rule applies and the continuing violation doctrine does not, their claims are untimely and must be dismissed. Because Syms is right on the law, the complaint should be dismissed.

## III.     THE DCHRA CLAIMS SHOULD BE DISMISSED.

Syms explained in its opening brief that the DCHRA, in contrast to the ADA, does not create affirmative design and construction requirements for public accommodations. Plaintiffs, in their opposition, concede this. In fact, they say that Syms has "attack[ed] the proverbial straw man" because "ERC does not seek to apply the ADA's design standards to the DCHRA." Opp. at 20. Instead, "ERC's claim under the DCHRA is entirely distinct from its claim under the ADA." *Id.* But plaintiffs' own complaint unmistakably shows otherwise. In paragraph 40, plaintiffs allege that "these stores violate the ADA and its implementing regulations and Standards, [and] [a]dditionally, ***based on the same barriers and conditions***, the Filene's Basement stores located within Washington, D.C. ***also violate the DCHRA***." Am. Compl. ¶ 40 (emphases added).

---

[3]     Plaintiffs attempt to argue that the statute of limitations was reset when Syms purchased certain of the Filene's Basement stores out of bankruptcy. No law or logic supports that contention. The liability that plaintiffs seek to impose on Syms stems from the original design and construction of those stores. There is no allegation that Syms recently constructed new Filene's Basement stores that suffer from ADA accessibility violations. Thus, regardless of the transfer of ownership of the stores at issue, the relevant acts on which plaintiffs base their claims (*i.e.*, the design and construction itself) remains unaffected. Stated differently, a statute of limitations is not reset for some past act simply because a new party has purchased the asset that gave rise to the alleged liability.

Paragraph 40 was not a slip of the pen.  The complaint repeatedly alleges that some act or omission related to the Filene's Basement stores constitutes both a violation of the ADA and of the DCHRA.  For instance:

- "[T]he access barriers at Filene's Basement stores are the result of a common design or designs dictated by Defendants' corporate policies, practices and procedures and/or absence of corporate policies, practices and procedures relating to compliance with the ADA **and the DCHRA**."  Am. Compl. ¶ 4 (emphasis added); *see also id.* ¶ 45 (identical quote).

- "***Defendants' stores contain structural and other barriers to accessibility*** by persons with disabilities ***in violation of*** the ADA and **the DCHRA**.  These violations include * * * paths of travel within the stores that are inaccessible due to stairs and other barriers; inaccessible fitting room features, including inaccessible clothes hooks, lack of benches and inaccessible paths of travel; [etc]."  Am. Compl. ¶ 42 (emphasis added).

- "As a result of Defendants' continuing failure to modify their policies, practices and procedures to provide exterior and interior access to Filene's Basement stores in a manner that is readily accessible to and usable by persons with disabilities as required by the ADA and the DCHRA * * *."  Am. Compl. ¶ 51.

- "Defendants have not modified their policies, practices, and procedures to ensure accessible entrances, merchandise aisles and other elements as required by the ADA and the DCHRA."  Am. Compl. ¶ 54.

In the face of these consistent and unambiguous allegations, it strains credulity for plaintiffs to assert that "[d]efendants' argument that the ERC seeks to apply the ADA design standards to the DCHRA lacks support in the pleadings."  Opp. at 21.  That is precisely the theory of DCHRA liability staked out in the complaint, and as plaintiffs now concede, it is untenable as a matter of law.

Plaintiffs cannot conjure up an entirely new theory of DCHRA liability in their opposition brief.  As this Court has previously explained, "'[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'"  *Boening v. C.I.A.*, 579 F. Supp. 2d 166, 174 (D.D.C. 2008) (quoting *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal*

*Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003)).  *See also Am. Petroleum Inst. v. Technomedia Int'l, Inc.*, __ F. Supp. 2d __, 2010 WL 1233496, at *3 n.4 (D.D.C. Mar. 30, 2010) ("Notwithstanding the wide latitude given to litigants at the pleading stage, a pleading is not to be used as a constantly moving target that the pleader can reformulate every time the pleading is challenged.  Sooner or later, it must stand or fall on its own.") (internal quotation omitted).  The DCHRA claim, as pleaded, is legally deficient and must be dismissed.

Dismissal would be appropriate even if plaintiffs could effectively amend their DCHRA claim through their brief.  That is because the revamped theory also fails to state a claim.  The new theory, to the extent Syms can discern it, is that a public accommodation stands in violation of the DCHRA if a disabled person is unable to make full use of the facility because of one or more architectural or other features.  For example, plaintiffs argue in their brief that the Filene's Basement stores violate the DCHRA because, among other things, plaintiff Johnson "could not navigate through the store because the clothing aisles were placed so close together as to block access for her wheelchair."  Opp. at 22.  In other words, the theory seems to be that even though the DCHRA does not incorporate the ADA design standards or establish its own set of design standards, a disabled person can bring suit under the DCHRA if she finds a particular feature insufficiently usable.  This theory is untenable because the DCHRA does not impose any specific design and construction standards, as plaintiffs concede, and without such standards, there is no way for architects, building owners, or courts to determine liability.

Disabilities vary markedly from one person to the next, and a public accommodation that is fully accessible from the perspective of one person may be extremely difficult for another disabled person to use.  It is simply impossible to construct a building that assuredly will be fully accessible to every disabled person.  The ADA addresses this problem in the following way.

First, Congress directed the Department of Justice to establish detailed, technical specifications—now known as the ADA Accessibility Guidelines for Buildings and Facilities— that are calculated to provide an adequate level of accessibility for a majority of disabled people. *See* 28 C.F.R. Pt. 36.  Second, the statute creates a "safe harbor" whereby owners of buildings that comply with the ADA Guidelines are shielded from ADA claims, even if a disabled person finds some aspect of the building unusable.  *See Ass'n for Disabled Ams., Inc. v. Concorde Gaming Corp.*, 158 F. Supp. 2d 1353, 1361 n.4 (S.D. Fla. 2001) ("[C]ompliance with the Department of Justice guidelines provides a type of safe harbor for the architectural design of newly constructed facilities.").

Under plaintiffs' novel DCHRA theory, there would be no objective standard that owners could cite to establish that their buildings provide an adequate level of accessibility for disabled patrons.  There would be no "safe harbor" similar to that of the ADA.  The only standard would be a purely idiosyncratic one: If a person is disabled and they have trouble using some aspect of a public accommodation, then they can sue to recover damages under the DCHRA and, according to ERC, punitive damages as well.  Am. Compl. ¶ 92.  Thus, even a building that is fully compliant with the ADA Accessibility Guidelines could be the target of a DCHRA suit. For example, a customer who lacked the strength to open a door that required 5 pounds of pressure to open could bring suit under the DCHRA, despite the fact that 5 pounds of pressure complies with the ADA Guidelines.  *See* 28 C.F.R. Pt. 36, App. A § 4.13.11.  Similarly, a patron in a wheelchair who could not use a water fountain mounted 36 inches above the floor could bring a DCHRA claim even though that mounting height is ADA-compliant.  *See Id*. § 4.15.2.

The best evidence that the D.C. Council did not intend to create such unpredictable liability for owners of public accommodations is the language of the DCHRA itself.  As Syms

previously explained, the Council amended the DCHRA in 1998 to adopt the FHA's affirmative design and construction requirements for multifamily housing.  *See* Mot. to Dismiss at 25-26. The FHA provides a safe harbor for multifamily housing developments that comply with the American National Standard Institute's ("ANSI's") standards for accessible design.  *See* 42 U.S.C. § 3604(f)(4).  The D.C. Council recognized the importance of providing a safe harbor, and it adopted the very same one for multifamily housing developments: "Compliance with the appropriate requirements of the [ANSI] standards for buildings and facilities providing accessibility and usability for persons with disabilities suffices to satisfy [the DCHRA] requirements."  D.C. Code § 2-1402.21(d)(4).  Thus, for multifamily dwellings, the DCHRA expressly adopts the same safe harbor standards as federal law.  If an apartment building complies with FHA design and construction requirements, it necessarily is in compliance with the DCHRA as well.

Plaintiffs have conceded that, following the enactment of the ADA in 1991, the D.C. Council did not incorporate into the DCHRA the detailed design and construction standards that the ADA imposed on places of public accommodation.  Not only are there no standards, but the DCHRA does not provide owners of public accommodations with a safe harbor that, if satisfied, will guarantee compliance and foreclose lawsuits by disabled customers who claim that some feature is inaccessible.  The fact that the D.C. Council did establish detailed standards and a safe harbor for multifamily housing developers shows that the Council knew how to do so.  The absence of parallel standards and a safe harbor for public accommodations must be presumed to have been deliberate.

At bottom, Plaintiffs' theory would create a nebulous implied cause of action under the DCHRA that would permit a disabled customer to recover compensatory and punitive damages

if she is unable to use some feature or amenity in a public accommodation.  That result would contravene basic principles of statutory construction, *see Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."), and would violate the Due Process Clause, *see Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (explaining that due process requires statutory duties to be expressed "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.").  Therefore, plaintiffs' DCHRA claim, as reformulated in their opposition brief, must be dismissed with prejudice.

## CONCLUSION

Accordingly, defendants respectfully request that this Court dismiss plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).


Respectfully submitted,


   /s/ Andrew A. Nicely
Andrew A. Nicely (D.C. No. 458805)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C.  20006
(202) 263-3000
anicely@mayerbrown.com

*Counsel for defendants Syms Corp. & Filene's Basement, LLC*

Dated:  June 28, 2010

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing has been served electronically by means of the Court's CM/ECF electronic filing system on June 28, 2010, on all counsel of record.

   s/ Andrew A. Nicely       
Andrew A. Nicely
